**ROBLOR MARKETING GROUP, INC., Plaintiff,**

**v.**

**GPS INDUSTRIES, INC., et al., Defendants.**

**Case No. 08–21496–CIV.**

United States District Court, S.D. Florida, Miami Division.

July 6, 2009.

---

Alejandro Alvarez, Piedra & Associates, P.A., Coral Gables, FL, Brian Douglas Hancock, Douglas Lee Bridges, W. Lewis Garrison, Jr., Heninger Garrison Davis LLC, Birmingham, AL, John F. Ward, Michael G. Gabriel, Ward & Olivo, New York, NY, for Plaintiff.

Catherine J. MacIvor, Jeffrey Eric Foreman, Maltzman Foreman PA, Kevin Crow Kaplan, David John Zack, Coffey Burlington, Leora Herrmann, Peretz Chesal & Herrmann, PL, Michael Eric Tschupp, Kluger Peretz Kaplan & Berlin, John Fulton, Jr., John Cyril Malloy, III, Oliver Alan Ruiz, Malloy & Malloy, Miami, FL, Alfonso Garcia Chan, Michael W. Shore, Rajkumar Vinnakota, Shore Chan Bragalone LLP, Dallas, TX, Morgan Lowery Swing, Coffey Burlington, Coconut Grove, FL, John Matthew Guard, Holland & Knight, Tampa, FL, Jeffrey Kamenetsky, Christopher & Weisberg, Jacqueline Clementine Tadros, Fort Lauderdale, FL, Jeff Toler, Toler Law Group, Austin, TX, Jordan S. Weinstein, Thomas J. Fisher, Oblon Spivak McClelland Maier & Neustadt, Alexandria, VA, James K. Sakaguchi, Neal M. Cohen, Valerie L. Sarigumba, Vista IP Law Group LLP, Kenneth G. Parker, Teuton Loewy & Parker LLP, Irvine, CA, for Defendants.

### ORDER ADOPTING MAGISTRATE'S REPORTS AND RECOMMENDATIONS AND DISMISSING KARRIER COMMUNICATIONS AND INTELLIGOLF, INC.

FEDERICO A. MORENO, District Judge.

THE MATTER was referred to the Honorable Edwin G. Torres, United States Magistrate Judge for a Report and Recommendation on Defendant Karrier Communications' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (**D.E. No. 61**), filed on *August 15, 2008* and Defendant Intelligolf, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (**D.E. No. 68**), filed on *August 22, 2008.* The Magistrate Judge filed two Reports and Recommenda-

tions (**D.E. Nos. 210 & 211**) on *June 3, 2009.* The Court has reviewed the entire file and record. The Court has made a *de novo* review of the Magistrate Judge's Reports and Recommendations, and being otherwise fully advised in the premises, it is

**ADJUDGED** that United States Magistrate Judge Edwin G. Torres's Reports and Recommendation (**D.E. Nos. 210 & 211**) on Defendant Karrier Communications' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Defendant Intelligolf, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, are **AFFIRMED** and **ADOPTED.** Accordingly, it is

**ADJUDGED** that:

(1) Defendant Karrier Communications' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is GRANTED without prejudice to refile in a court having personal jurisdiction over Karrier and in a district with proper venue; and

(2) Defendant Intelligolf, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is GRANTED without prejudice to refile in a court having personal jurisdiction over Intelligolf, Inc. and in a district with proper venue.

*REPORT AND RECOMMENDATION ON KARRIER COMMUNICATIONS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE*

EDWIN G. TORRES, United States Magistrate Judge.

This matter is before the Court on Defendant Karrier Communications's ("Karrier") Motion to dismiss Roblor Marketing

Group, Inc.'s ("Roblor") Complaint for lack of personal jurisdiction pursuant Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).[1] [D.E. 61; 174].

## I. BACKGROUND

### 1. Procedural Background

On May 23, 2008, Roblor filed a Complaint against twelve defendants, including Karrier, for infringement of United States patent No. 5,507,485 (the "Patent") in the Southern District of Florida. The patent was issued on April 16, 1996 and features a portable device including GPS technology that enables users to, among other things, view golf courses and keep track of their shots and scores.

On August 15, 2008, Karrier filed a Motion to dismiss for improper venue alleging that: (1) venue is not available over Karrier as an individual under 28 U.S.C. § 1391 and specifically § 1391(c); (2) 28 U.S.C. § 1400(b) is the exclusive venue provision applicable to Karrier; (3) Karrier resides in another state, *i.e.* California and is not a corporation; (4) Karrier does not have a regular place of business in the Southern District of Florida; (5) Karrier has not performed any act of infringement of the Patent in the Southern District of Florida; and finally (6) Roblor has not even alleged facts that would support venue in the Southern District of Florida. [D.E. 61].

On September 03, 2008, Roblor filed a Response and reiterated that venue is proper because: (1) Karrier is a partnership and not a sole proprietorship; (2) therefore, Karrier is subject to 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(b) as a partnership and resides in Florida; and (3) Karrier has committed acts of infringe-

[1]. On August 26, 2008, the Honorable Federico A. Moreno referred this case to the undersigned Magistrate Judge to take all necessary and proper action as required by law, with respect to any and all pretrial matters. [D.E. 78].

ment and has a regular and established place of business in Florida. [D.E. 80]. On September 8, Karrier replied. [D.E. 94].

Following a hearing on this and other motions, on October 29, 2009, Karrier filed, with leave of this Court, a supplemental Motion to dismiss adding a lack of personal jurisdiction claim to its improper venue argument. [D.E. 173–74]. Specifically Karrier alleges that the Southern District of Florida does not have jurisdiction over it because the Florida's long-arm statute does not apply to Karrier's actions or, alternatively, because jurisdiction in Florida over Karrier would not meet the requirements of constitutional due process. (Karrier's Revised Mot. to Dismiss 10–18).

On December 11, 2008, this Court gave the parties the opportunity to file supplemental memoranda with respect to Karrier's and Intelligolf, Inc's ("Intelligolf") Motions to dismiss for lack of jurisdiction and improper venue no later than January 23, 2009.[2] [D.E. 179]. On January 13, 2009, we granted Roblor's Motion for extension of time to complete jurisdictional discovery allowing the parties to conduct discovery through February 27, 2009 and directing Roblor to supplement its opposition to the pending Motions to no later than March 13, 2009. [D.E. 185]. On February 24, 2009, we entered an order on a Motion for clarification extending the jurisdictional discovery deadline to March 20, 2009 and the deadline for filing supplemental memoranda for all parties to April 3, 2009. [D.E. 191]. Finally, on March 18, we issued an order granting Karrier and Intelligolf Inc. ("Intelligolf") an extension of time to file their supplemental memoranda until April 10, 2009.

While Roblor saw no need to file a supplemental memorandum, Karrier and In-

telligolf jointly filed a sealed memorandum on the results of the jurisdictional discovery undertaken in support of their respective Motions to dismiss. [D.E. 203–4].

### 2. Facts Material to the Motion

Roblor is a corporation with a place of business located in Pompano Beach, Florida. (Roblor's Compl. 2). Roblor is the owner of all rights, title and interests in and to the Patent, including the right to sue. *Id.*

Karrier is a business registered in California as an individual and only licensed to do business in California. (Karrier's Revised Mot. to Dismiss Ex. A). Karrier's activity is listed as "computer services and web design" and Karrier mainly provides marketing services for engineers. (Karrier's Revised Mot. to Dismiss Ex. B).

Michael Bryant and James Simpkins developed the allegedly infringing software application Intelligolf. (Karrier's Revised Mot. to Dismiss Ex. C, D). They then marketed Intelligolf through Karrier as Karrier's independent contractors. *Id.* In 2007, Karrier stopped marketing the Intelligolf software and assigned to Intelligolf all rights, titles, and interests in the Intelligolf software. (Karrier's Revised Mot. to Dismiss Ex. A, C, D).

Karrier does not have an address, offices or employees in Florida. (Karrier's Revised Mot. to Dismiss Ex. A). Karrier does not have a telephone number and does not receive telephone messages and mails in Florida. (Karrier's Revised Mot. to Dismiss Ex. B). Karrier does not sell or make demonstrations in Florida. *Id.* Its only contact with Florida is its two websites, www.karrier.com and www.karriercomunications.com, which are identical and consist of one web page advertis-

---

**2.** The Court also stayed the case pending resolution of the Patent and Trademark Office's reexamination process but exempted the pending issues from that stay. [D.E. 177].

ing Karrier's marketing services for engineers. (Karrier's Revised Mot. to Dismiss Ex. F; G). The message displayed invites potential customers to contact Karrier through its e-mail. *Id.* Karrier's websites page also informs that "Karrier Communications' clients have included ... the inventors of ... Intelligolf." *Id.* No sale or commercial exchange, however, can be made through the websites.[3] *Id.* Yet Karrier's websites are accessible world-wide. *Id.*

## II. ANALYSIS

### A. Dismissal for Lack of Personal Jurisdiction

Karrier alleges that this Court lacks subject-matter jurisdiction because Karrier's activities do not meet the requirements of the Florida long-arm statute and, in the alternative, due process prevents this Court from exercising jurisdiction over Karrier. (Karrier's Revised Mot. to Dismiss 11–14).

#### 1. Applicable Law

■ Federal Circuit law governs the issue of whether a court has personal jurisdiction over a defendant in a patent infringement claim. *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1348 (Fed.Cir. 2003) (citing *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995)).

■ Federal Rule of Civil procedure 12(b)(2) allows a dismissal of a complaint for lack of personal jurisdiction. Fed. R. Civ. Pro. 12(b)(2). "[I]n the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc.,* 340 F.3d at 1349

(citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1347 (Fed.Cir.2002)).

■ "Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.,* 814 F.Supp. 1058, 1064 (M.D.Fla.1993) (stating the burden of proof in a patent infringement action) (citing *Prentice v. Prentice Colour, Inc.,* 779 F.Supp. 578, 586 (M.D.Fla.1991)). "If the defendant sufficiently challenges plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint." *Id.*

#### 2. The Florida Long–Arm Statute

■ "When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626–27 (11th Cir.1996) (citing *Cable/Home Commc'n v. Network Prod's,* 902 F.2d 829, 855 (11th Cir.1990)).

Roblor alleges that this Court has personal jurisdiction over Karrier. (Roblor's Resp. to Karrier's Mot. to Dismiss 5–7). Because we find insufficient minimum contacts exist between Intelligolf and Florida under the due process clause and this finding is dispositive of the Motion to dismiss, we will assume that Roblor has satisfied

---

**3.** Roblor alleges that Intelligolf's product can be purchased through "Karrier's Intelligolf website." (Roblor's Resp. to Karrier Mot. to Dismiss 6). Roblor's allegation that Karrier had control over Intelligolf website at the time the Complaint was filed is not adequate-

ly supported in this record. In any event, we find that the Intelligolf website is insufficient to support personal jurisdiction over Intelligolf, as well as Karrier to the extent that website is relevant here.

the pleading requirements of the Florida long-arm statute, Fla. Stat. § 48.193.

### 3. Due Process

 If personal jurisdiction is established under the state statute, the Court must determine whether jurisdiction satisfies the requirements of the Due Process Clause. U.S. Const. amend. V; *see Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1355 (Fed.Cir.2002). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1329 (Fed.Cir.2008) (citing *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The defendant's conduct and connection with the forum State have to be such "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

 These principles are applied to different forms of personal jurisdiction, specific and general jurisdiction. Specific jurisdiction attaches only to suits arising

from a defendant's contact with the forum, whereas general jurisdiction can more broadly attach to suits unrelated to defendant's contacts with the forum. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 n. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Roblor did not specify whether it asserts general and special jurisdiction over Karrier. (Roblor's Compl. 4–5). We find that neither basis for jurisdiction exists.

### (a) Specific Jurisdiction

 Where specific jurisdiction is asserted, the inquiry is "whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp.*, 552 F.3d at 1332.

### i. Activity Purposefully Directed to the Residents of the Forum

 If Karrier had purposefully targeted its activity to the residents of Florida, Karrier could have done so only through its websites. Karrier does not have any other contacts with Florida. Karrier does not have an address, offices, or employees in Florida. (Karrier's Revised Mot. to Dismiss Ex. A). Karrier does not maintain a telephone number in Florida. Karrier does not advertise or sell in Florida. Craig Schmidt declared that "Karrier has—in the last five years has [sic] never sold directly to anyone in the state of Florida." (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C–18). However, its websites are accessible to Florida residents. (Karrier's Revised Mot. to Dismiss Ex. F; G).

In order to find jurisdiction based on the existence of a website, some courts have accepted that a "highly transaction-oriented website" may by itself give rise to

personal jurisdiction, referring to the "sliding scale" analysis adopted by one district court. *See Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed.Cir.2005). *Zippo Manufacturing* explained the sliding scale analysis as follows:

[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well [-]developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the [propriety of the] exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

This sliding-scale analysis assesses the sufficiency of the minimum contacts by measuring the degree of activity or passivity of the website. Following this analysis, Karrier's websites are undoubtedly passive. Karrier's website pages only display contact information. No communication or sale can be made through the websites. The websites invite potential customers to contact Karrier through its e-mail but no e-mail can be posted on the websites. Purely under a sliding scale analysis, therefore, Karrier's passive websites would be insufficient minimum contacts by themselves for this Court to find personal jurisdiction over Karrier.

We add, however, that the email address displayed on Karrier's websites is in the form of a hyperlink, which arguably renders the website less passive and more interactive. But even assuming that this feature *per se* would requalify Karrier's websites as interactive, jurisdiction would still not be warranted.

■ When a website is interactive, the exercise of jurisdiction is determined by examining (1) "the level of interactivity" and (2) "the commercial nature of the exchange of information that occurs on the Web site." *Zippo Mfg. Co.*, 952 F.Supp. at 1124. The level of interactivity is very low as the only interactive feature is the hyperlinks. With respect to the second prong of the inquiry, while the information posted by Karrier is purely commercial in nature, there is no *exchange* of information on the websites. Accordingly, we find that personal jurisdiction would not be warranted under a pure sliding scale analysis of this website.

However the Federal Circuit has not yet addressed what weight, if any, should be given to the sliding scale of interactivity analysis. Other circuits have addressed the issue.

Some circuits have embraced this analysis. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir.2003) (recognizing the *Zippo case* as a "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site"); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999) (adopting the

sliding scale analysis to assess *general* jurisdiction, even though the Fifth Circuit later recognized that the *Zippo* analysis is not always "well adapted to the general jurisdiction inquiry" *Revell v. Lidov,* 317 F.3d 467, 471 (5th Cir.2002)); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir.1997) (finding that "the common thread, well stated by the district court in *Zippo,* is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.' ").

Some circuits have adopted the sliding scale of interactivity as one factor among others to define the purposeful availment factor. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 714 (4th Cir.2002) (adopting and adapting the sliding scale analysis); *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 890 (6th Cir.2002); *Lakin v. Prudential Sec., Inc.* 348 F.3d 704, 711 (8th Cir.2003) (holding that the "Zippo model is an appropriate approach in cases of specific jurisdiction").

Where the *Zippo* model has not been expressly adopted, some circuits, including the Federal Circuit, nevertheless have used the distinction between active, passive, and interactive website as one factor, among others, to determine the appropriateness of personal jurisdiction over a defendant. *See McBee v. Delica Co.,* 417 F.3d 107, 124 (1st Cir.2005) ("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum ... Something more is necessary, such as interactive features which allow the successful online ordering of the defendant's products."); *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 549–50 (7th Cir.2004) (hold-

ing that "Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country"); *Soma Medical Intern. v. Standard Chartered Bank,* 196 F.3d 1292, 1296 (10th Cir.1999) (drawing the distinction between active, passive and interactive websites to assess general jurisdiction); *Trintec Indus., Inc.,* 395 F.3d at 1281 ("Although [plaintiff] has shown that [defendant]'s websites contain some interactive features aimed at transacting business, it is unclear how frequently those features are utilized or, indeed, whether any District residents have ever actually used [defendant]'s website to transact business").

While many circuits have adhered to the sliding scale analysis, some have opted for a more restrictive reading of the *Zippo* case. *See Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 252 (2d Cir.2007) (holding that while the sliding scale analysis may "help frame the jurisdictional inquiry in some cases ... 'it does not amount to a separate framework for analyzing internet-based jurisdiction.' ... Instead, 'traditional statutory and constitutional principles remain the touchstone of the inquiry' ... As the *Zippo* court itself noted, personal jurisdiction analysis applies traditional principles to new situations").

Finally, one circuit disfavors the use of the sliding scale analysis altogether to assess personal jurisdiction. *See Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 510–511 (D.C.Cir.2002) (opting for the traditional notions of personal jurisdiction when assessing general jurisdiction on the ground that " 'Cyberspace' ... is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks

and mortar. Just as our traditional notions of personal jurisdiction have proven adaptable to other changes in the national economy, so too are they adaptable to the transformations wrought by the Internet").

It is worth noting that the Eleventh Circuit also recognized the criticism surrounding the *Zippo* case:

> While many courts have utilized the *Zippo* test in one form or another, scholars have generally been critical of the *Zippo* construct. One commentator has argued that *Zippo*'s interactivity litmus test is inconsistent with traditional due process analysis because it excludes all "passive" websites from supporting personal jurisdiction even though the level of interactivity is of minimal significance with respect to whether a defendant has directed the website towards the forum. A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network–Mediated Contacts*, 2006 U. Ill. L.Rev. 71, 86–103 (2006). Rather than utilizing such an artificial approach, Professor Spencer argues that courts should simply apply traditional analysis-looking to whether (1) the defendant directed the internet activity into the state, (2) the internet contact gave rise to the cause of action, and (3) the exercise of jurisdiction is constitutionally reasonable. *Id.* at 109–11. Another commentator, although arguing that the traditional personal jurisdiction approach should yield in the Internet context, has noted that *Zippo*'s interactivity model is somewhat unpredictable and should be modified to preserve the constitutionally required "foreseeability" and "fairness" principles. *See Reid, supra* at 259–62. Under the proposed modified approach, a finding that the website was highly interactive for purposes of *Zippo* would only give rise to a presumption of purposeful availment, allowing a defendant to prof-

fer evidence that it was not purposefully targeting the forum. *See id.*

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir.2009). While the Eleventh Circuit discussed the *Zippo* case and the criticisms surrounding it, it declined to express any firm opinion as to its applicability.

The district courts in the Eleventh Circuit are split on the issue. Some have applied *Zippo* as persuasive precedent. *See Alternate Energy Corp. v. Redstone*, 328 F.Supp.2d 1379, 1382 (S.D.Fla.2004) (citing Florida courts having applied the *Zippo* analysis); *Miller v. Berman*, 289 F.Supp.2d 1327, 1335 (M.D.Fla.2003) (citing the *Zippo* case and concluding that "[i]n order to determine whether personal jurisdiction can be exerted over Defendants in this instance the Court must examine the nature of the interaction between Mr. Miller and Defendants over the Internet"); *Foreign Imported Productions and Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, 2008 WL 4724495, at *8 (S.D.Fla. Oct. 24, 2008) (citing *Zippo* and assessing jurisdiction pursuant to the nature of the defendant's website). Other Florida courts have departed from the *Zippo* approach, arguing that "website interactivity may have some bearing on the jurisdictional analysis, but it is not determinative." *Instabook Corp. v. Instantpublisher.com*, 469 F.Supp.2d 1120, 1125 (M.D.Fla.2006).

We share in the criticism of over-reliance on the sliding scale of interactivity analysis. The sliding scale offers little guidance in the case of a defendant running a website that falls in the middle ground. Moreover, this test is likely to be too rigid with regards to the passive and active categories of websites. Passive websites could very well target a specific forum state and give rise to personal jurisdiction. Similarly, an active website, which does not target a forum state,

should perhaps not give rise to personal jurisdiction by itself. That is the outcome reached in the *Toys "R" Us* case. *Toys "R" Us, Inc.*, 318 F.3d at 454. The Third Circuit found that the defendant's website, "while commercial and interactive," did "not appear to have been designed or intended to reach customers [in the forum state]." *Id.* The website was entirely in Spanish, the prices based on foreign currency, and merchandise could only be shipped within Spain. In that respect, the sliding scale analysis was inappropriate.

It is worth noting that the *Zippo* court, while establishing the sliding scale analysis, ultimately did not rely on it. *Zippo Mfg. Co.*, 952 F.Supp. at 1125–27; *Best Van Lines, Inc.*, 490 F.3d at 251 (2d Cir. 2007) (observing that the *Zippo* court relied on the actual interactions of the defendant with the forum residents). Many courts may have given more weight to the sliding scale analysis than the *Zippo* court itself intended to do.

Critics of the *Zippo* analysis advocate a return to traditional notions of personal jurisdiction. *See Gorman*, 293 F.3d at 510–511 (D.C.Cir.2002); A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network–Mediated Contacts*, 2006 U. Ill. L.Rev. 71, 86–103 (2006). It is doubtful, however, that the *Zippo* court meant to forgo these traditional notions to the exclusive control of the sliding scale analysis. To the contrary, *Zippo* did analyze whether the defendant purposefully availed itself of doing business in the forum state and pointed out that: "[t]radi-

tionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper ... Different results should not be reached simply because business is conducted over the Internet." *Zippo Mfg. Co.*, 952 F.Supp. at 1124. Accordingly, the sliding scale analysis was probably only meant to be used as a tool to determine the purposeful availment of a defendant to a forum and not as an exclusive "separate framework." [4]

▮ Given no clear holding on the issue from the Federal Circuit and the divergent outcomes reached among the circuits, we decline to find that our determination under the sliding scale analysis is dispositive. We will use it as a guidepost but also turn to analyze the purposeful availment requirement under a more traditional approach. The outcome of that broader traditional analysis, however, is the same.

To assess whether Karrier purposefully availed himself of the Florida forum, we need to analyze both its website activity as well as its actual interactions with the state of Florida. However, there is no evidence in the record of any actual interaction with the state of Florida. The mere world-wide accessibility of Karrier's websites in the absence of any actual interaction will not support a finding that jurisdiction attaches.

Finally, the key element to the due process analysis is foreseeability. "The defendant's conduct and connection with the

---

4. Judge Jordan from our Court appears to have taken that view in a case where the sliding scale analysis was cited to establish general jurisdiction over a non-resident defendant that maintained an interactive website. "Indeed, while the law may still be unsettled in the Eleventh Circuit, other circuits have required that for personal jurisdiction to be based on a website—even an interactive one—

it must be shown that the owner of the website manifestly intended to target citizens of the forum state." *Estate of Fraser v. Smith*, 2007 WL 5007084, at *8 (S.D.Fla. Nov. 13, 2007) (dismissing case based on lack of personal jurisdiction despite the existence of the interactive website because there was no record of any targeting of Florida residents).

forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559. There must be some degree of predictability "that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* In this case, Karrier could not have foreseen being haled in Florida. Karrier is not licensed to do business in Florida and has no income from direct Florida sales. Karrier has no agents, resellers, and distributors, nor any presence whatsoever in Florida. Karrier has never targeted Florida residents through an advertising campaign. There is no evidence that Karrier holds any bank account or has any investments in Florida, nor pays taxes here. Karrier have not contracted with any party in Florida. Roblor has not presented any evidence supporting that Florida was a predictable forum for Karrier.

Accordingly, even though the analysis applicable to website activity for purposes of personal jurisdiction is not well-settled, our analysis concludes that the type of websites that Karrier maintains does not give rise to personal jurisdiction in Florida.

In addition, this Court could assert jurisdiction over Karrier only if the second and third prongs are satisfied. They too have not been met in this case.

*ii. Karrier's Forum–Related Activities*

To assert specific jurisdiction, the claim asserted by Roblor must arise out of Karrier's forum-related activities. However, there is no evidence of any Florida-related activities by Karrier, except through its websites. The websites do not allow, directly or even remotely, to sell the allegedly infringing software. Therefore Karrier's Florida-related activities are insufficient to meet the second prong of this inquiry.

*iii. Reasonableness and Fairness*

 "With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King.*" *Avocent Huntsville Corp.,* 552 F.3d at 1332; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

 The five *Burger King* factors to weigh are: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.*

We find that the burden on Karrier to litigate in Florida would be substantial given that Karrier is a very small business. Craig Schmidt, the sole owner of Karrier, resides in California and testifies that litigating in Florida will disrupt Karrier's business. (Karrier's Revised Mot. to Dismiss Ex. 2). Considering the very few contacts Karrier has with the state, Florida's interest in the issue is quite limited. Even though it would be more convenient for Roblor to obtain relief in Florida, this convenience is far outweighed by Karrier's burden to litigate here. The last factor does not weigh in favor of any party. In sum, these factors weigh against a finding of jurisdiction over Karrier.

We conclude, therefore, that the Court lacks specific personal jurisdiction over Karrier in this action. The motion to dismiss on this basis should be granted.

*(b) General Jurisdiction*

It is unclear whether Roblor asserts general jurisdiction over Karrier. (Roblor's Compl. 4–5). We will address the issue just in case it does.

"[A]n assertion of *general* jurisdiction requires that the defendant have continuous and systematic contacts with the forum state, and that such activity will confer [ ] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." *Avocent Huntsville Corp.*, 552 F.3d at 1331–32 (quotations omitted). "[T]hese contacts must be 'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities.'" *In re Farmland Indus., Inc.*, 2007 WL 1018367, at *3 (M.D.Fla. March 20, 2007) (citing *Hockerson–Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed.Appx. 322, 337 (Fed.Cir.2003)).

There is *nothing* in the Motion to dismiss record evidencing Karrier's continuous and systematic contacts with Florida. Karrier is not licensed to do and does not carry out business in Florida. (Karrier's Revised Mot. to Dismiss Ex. B). Karrier has no address, office, or employees in Florida. *Id.* Karrier never had any physical presence of any kind in Florida. (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C–19). No advertising or marketing has been directed at Florida. (Intelligolf s and Karrier's Revised Mot. to Dismiss Ex. C–19).

Accordingly, we find that asserting general or specific jurisdiction over Karrier would not meet constitutional due process requirements.

**B.** ***Dismissal Based Upon Improper Venue***

Karrier alleges that Roblor's complaint should be dismissed because venue is improper in the Southern District of Florida, pursuant to 28 U.S.C.A. § 1400(b), which is the only statute applicable to sole proprietorships. (Karrier's Revised Mot. to Dismiss 3–4).

Karrier submitted several affidavits and other materials to support its contention that Karrier is a sole proprietorship. Karrier provided a copy of Karrier's business license identifying Karrier as a business carried by a sole individual. (Karrier's Revised Mot. to Dismiss Ex. 1). Karrier also furnished the affidavits of Craig Schmidt, the owner of Karrier, Michael Bryant, and James Simpkins, the alleged "partners" of Karrier, all of which declare under penalty of perjury that Karrier is a sole proprietorship. (Karrier's Revised Mot. to Dismiss Ex. 2–4). Finally, Karrier included in his Motion 1099 Forms showing that Michael Bryant, and James Simpkins were remunerated as independent contractors. (Karrier's Revised Mot. to Dismiss Ex. 5–8). Therefore, the evidence before this Court supports Karrier's contention.

Roblor responds that the three same individuals, Craig Schmidt, Michael Bryant, and James Simpkins, asserted in a recent lawsuit filed by Karrier in the Western District of Washington that they collectively carry business under the name "Karrier Communications." (Roblor's Resp. to Karrier's Revised Mot. to Dismiss 3; Ex. A–B). But Roblor has not shown that this single assertion satisfies the elements required for judicial estoppel. And in the absence of any authority establishing that a prior acknowledgment that a business entity may be a partnership affects this business's status for venue purposes, this Court will not give much weight to this argument.

In any event, there is enough evidence as a whole supporting the finding that Karrier is a sole proprietorship without the need to consider the declarations of

Craig Schmidt, Michael Bryant, and James Simpkins. Therefore, we find that Karrier is a sole proprietorship. Thus under Rule 28 U.S.C.A. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C.A. § 1400(b).

■■■ Section 1400(b) is the exclusive provision controlling venue in patent infringement actions against individuals. *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). Sole proprietorships are regarded as individuals for venue purposes. *Kabb, Inc. v. Sutera*, 1992 WL 245546, at *2 (E.D. La. Sept. 4, 1992) (stating that a sole proprietorship is just "an individual doing business under a trade name"); *See also Blue Compass Corp. v. Polish Masters of America*, 777 F.Supp. 4, 5 (D.Vt.1991); *Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F.Supp.2d 449, 459 (S.D.N.Y.2000) (holding that "expanding the definition of 'corporation' to include sole proprietorships would be overly burdensome and inconvenient to sole proprietors, most of whom would be unable to afford the expense of litigating in distant states").

It is undisputed that Craig Schmidt, the owner of Karrier, resides in California. (Karrier's Revised Mot. to Dismiss Ex. 2). Craig Schmidt declares that Karrier's sole place of business is his home. (Karrier's Revised Mot. to Dismiss Ex. 2). Even if Karrier has an office in Washington, as suggested by Roblor by reference to the Complaints filed by Karrier in the Western District of Washington, that still does not establish residency in the Southern District of Florida. (Roblor's Resp. to Karrier's Revised Mot. to Dismiss 3; Ex. A–B). Accordingly, the Southern District of Florida is not a proper venue under the first prong of § 1400(b).

The second prong of § 1400(b) mandates that venue is proper if two conjunctive conditions are meet: the defendant has committed acts of infringement and has a regular and established place of business in the district where it is sued. *HomeBingo Network, Inc. v. Chayevsky*, 428 F.Supp.2d 1232, 1248 (S.D.Ala.2006).

■■■ "Section 1400(b) does not define what is meant by the term 'regular and established place of business,' and case authorities have reached disparate conclusions as to its precise definition." *HomeBingo Network*, 428 F.Supp.2d at 1249. The United States Supreme Court has reminded us that § 1400(b) should not be given a " 'liberal' construction." *Schnell v. Peter Eckrich and Sons, Inc.*, 365 U.S. 260, 264, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); *Lex Tex Ltd. v. Aileen, Inc.*, 326 F.Supp. 485, 487 (S.D.Fla.1971). Therefore the "permanent and continuous presence" inquiry, which is applicable to corporate defendants, cannot be applied to a non-corporate defendant. *HomeBingo Network*, 428 F.Supp.2d at 1249 (citing *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir.1985)). Rather, "[a] defendant must be regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." *Hsin Ten Enter. USA, Inc.*, 138 F.Supp.2d at 461 (citing *Kinetic Instruments, Inc. v. Lares*, 802 F.Supp. 976, 987 (S.D.N.Y.1992) and finding that venue was improper in the Southern District of New York pursuant to § 1400(b) even though defendant's interactive website supported personal jurisdiction there). Mere solicitation of orders in a district is not sufficient by itself to establish that a defendant had a regular and established place of business in the district for purposes of establishing venue.

*MTEC, LLC v. Nash,* 2008 WL 4723483, at *7 (D.Or. Oct. 20, 2008).

We believe that Karrier does not have a regular and established place of business in Florida. The standard "regular and established place of business," is quite narrow: it involves more "than doing business," Karrier must be "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." *Hsin Ten Enter. USA, Inc.,* 138 F.Supp.2d at 461.

Roblor does not contest that Karrier has no office in Florida, that it does not make demonstrations in Florida, and does not have a telephone number or address in Florida. (Karrier's Revised Mot. to Dismiss 9; Roblor's Resp. to Karrier's Revised Mot. to Dismiss 7). The only activity at issue with respect to Karrier's place of business is its website activity. Karrier's websites do not allow the purchase of products and are therefore passive. (Karrier's Revised Mot. to Dismiss Ex. 9; 10). Nothing in the record shows that Karrier carries any business in Florida. Accordingly, we find that Karrier has not a regular and established place of business in Florida.

Consequently, we find that venue is also not proper in the Southern District of Florida.

### III. CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge recommends that Karrier's motion to dismiss Roblor's complaint for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) be **GRANTED** without prejudice to refiling in a court having personal jurisdiction over

Karrier and in a district with proper venue.

Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 3rd day of June, 2009.

### REPORT AND RECOMMENDATION ON INTELLIGOLF'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

This matter is before the Court on Defendant Intelligolf, Inc.'s ("Intelligolf") Motion to dismiss Roblor Marketing Group, Inc.'s ("Roblor") Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).[1] [D.E. 68]. For the following reasons, the Motion should be Granted.

### I. BACKGROUND

#### A. Procedural Background

On May 23, 2008, Roblor filed a Complaint against twelve defendants, including

---

1. On August 26, 2008, the Honorable Federico A. Moreno referred this case to the undersigned Magistrate Judge to take all necessary and proper action as required by law, with respect to any and all pretrial matters. [D.E. 78].

Intelligolf, for infringement of the United States patent No. 5,507,485 (the "Patent") in the Southern District of Florida. The patent was issued on April 16, 1996 and features a portable device including GPS technology that enables users to, among other things, view golf courses and keep track of their shots and scores.

On August 22, 2008, Intelligolf filed a Motion to dismiss for lack of personal jurisdiction and improper venue. [D.E. 68].[2] Intelligolf alleges that the Southern district of Florida does not have jurisdiction over it pursuant to Florida's long-arm statute and jurisdiction over Intelligolf would not meet the requirements of constitutional due process. [*Id.* at 5]. Additionally, Intelligolf contends that venue is improper pursuant to 28 U.S.C.A. § 1400(b) and 28 U.S.C.A. § 1391(c). [*Id.* at 20].

On September 11, 2008, Roblor filed a Response in opposition, claiming that jurisdiction is proper because Intelligolf's activity satisfies Sections 48.193(1)(a); (b); (f); and 48.193(2) of Florida's long-arm statute. (Roblor's Resp. to Intelligolf's Mot. to dismiss 8–13) [D.E. 96]. Roblor also contends that jurisdiction comports with constitutional due process. [*Id.* at 13]. Roblor further maintains that venue is proper in this District. [*Id.* at 21]. On September 17, 2008, Intelligolf filed a reply. [D.E. 94].

Following a hearing held on these and other pending matters in the case, on December 11, 2008, this Court gave the parties the opportunity to file supplemental memoranda with respect to the Motions to dismiss for lack of jurisdiction and improper venue no later than January 23, 2009.[3] [D.E. 179]. On January 13, 2009, we granted Roblor's Motion for extension of time to complete jurisdictional discovery allowing the parties to conduct discovery through February 27, 2009 and directing Roblor to supplement its opposition to the pending motions to dismiss no later than March 13, 2009. [D.E. 185]. On February 24, 2009, we entered an order on a Motion for clarification extending the jurisdictional discovery deadline to March 20, 2009 and the deadline for filing supplemental memoranda for all parties to April 3, 2009. [D.E. 191]. Finally, on March 18, we issued an order granting Intelligolf and Karrier Communications, Inc. ("Karrier") an extension of time to file their supplemental memoranda until April 10, 2009. [D.E. 196].

While Roblor saw no need to file a supplemental memorandum, Karrier and Intelligolf jointly filed a sealed memorandum on the results of the jurisdictional discovery undertaken in support of their Motions to dismiss. [D.E. 203–4]. The record on the pending motion is, therefore, now complete. Neither party has requested an evidentiary hearing, and the Court finds that none is required given the absence of disputed material facts relevant to the jurisdiction and venue issues.

### B. Facts Material to the Motion

Roblor is a corporation with a place of business located in Pompano Beach, Florida. (Roblor's Compl. 2). Roblor is the owner of all rights, title and interests in and to the Patent, including the right to sue. *Id.*

Intelligolf is a Delaware corporation formed in May 2007, with a place of business located in Cameron Park, California. (Intelligolf's Mot. to Dismiss 3; Ex. A; B;

---

**2.** This Motion was originally filed on August 15, 2008, and re-filed in a single filing pursuant to a request of the Clerk of the Court. [D.E. 56; 57; 58]. This did not affect the Motion's timeliness.

**3.** The Court also stayed the case pending resolution of the Patent and Trademark Office's reexamination process but exempted the pending issues from that stay. [D.E. 177].

C). On June 1, 2007, Intelligolf acquired all rights, titles, and interests from Karrier in the Intelligolf software, as well as other related software (such as Intellitimer, Intelliswim etc.). (Intelligolf's Mot. to Dismiss Ex. D). Intelligolf is engaged in the business of marketing and selling Intelligolf products. *Id.* Michael Bryant, James Simpkins, and Craig Schmidt are Intelligolf's shareholders, and Craig Schmidt is also its sole employee. (Intelligolf's Mot. to Dismiss Ex. D; E; F). Intelligolf is only licensed to do business in California, and does not have an address, an office, or employees in Florida. (Intelligolf's Mot. to Dismiss 3; Ex. A; B; C). Intelligolf never had a physical presence in Florida. (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C–19). Intelligolf never directed advertising or marketing at Florida residents. (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C–19).

Intelligolf, however, operates a website, that provides advertising of Intelligolf's products as well as marketing links to a number of resellers and distributors, who are not located in Florida. (Intelligolf's Mot. to Dismiss Ex. D; G; H). The Intelligolf software can be directly purchased from these resellers' and distributors' websites. *Id.* Intelligolf's website is accessible to Florida residents. (Intelligolf's Mot. to Dismiss Ex. D).

On September 2, 2008, a paralegal working for Roblor's counsel registered and ordered an Intelligolf Birdie Edition by accessing Intelligolf's website, following the active link to a reseller, and then purchasing the software from this reseller. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 1–A; B; C; D). Intelligolf's website features free downloadable golf courses, including Florida golf courses. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2–C).

On September 11, 2008, another individual, a scientific advisor working for Rob-lor's counsel, also registered and created an Intelligolf account on Intelligolf's website. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2–A; B; C; D; E; F). As a result of his registration, he received an automatically generated e-mail from Intelligolf confirming his registration and his enrollment into the Intelligolf newsletter program. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2–A). In order to create an account, he had to agree to a click-wrap license, providing that any suit arising out of the agreement should be brought only in a state or federal court of competent jurisdiction located in Sacramento, California. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2–A). He then navigated the website and found downloadable maps of Florida golf courses. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2–B).

## II. ANALYSIS

### A. Dismissal for Lack of Personal Jurisdiction

Intelligolf alleges that this Court lacks personal jurisdiction because Intelligolf does not meet the requirements of the Florida long-arm statute and, in the alternative, due process prevents this Court from exercising jurisdiction over Intelligolf. (Intelligolf Mot. to Dismiss 6; 12).

#### 1. Applicable Law

Federal Circuit Law governs the issue of whether a court has personal jurisdiction on a patent infringement claim. *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1348 (Fed.Cir.2003) (citing *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed. Cir.1995)).

Federal Rule of Civil procedure 12(b)(2) allows a dismissal of a complaint for lack of personal jurisdiction. Fed. R. Civ. Pro. 12(b)(2). "[I]n the absence of an evidentiary hearing, a plaintiff need only to make a

*prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc.*, 340 F.3d at 1349 (Fed. Cir.2003) (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed.Cir. 2002)).

"Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, 814 F.Supp. 1058, 1064 (M.D.Fla.1993) (stating the burden of proof in a patent infringement action) (citing *Prentice v. Prentice Colour, Inc.*, 779 F.Supp. 578, 586 (M.D.Fla.1991)). "If the defendant sufficiently challenges plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint." *Id.*

### 2. The Florida Long–Arm Statute

"When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir.1996) (citing *Cable/Home Commc'n v. Network Prod's*, 902 F.2d 829, 855 (11th Cir.1990)).

Roblor alleges that each of the following provisions of the long-arm statute apply in this case:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193.

Because we find insufficient minimum contacts exist between Intelligolf and Florida under the due process clause, and this finding is dispositive of the Motion to dismiss, we will assume that Roblor has satisfied the pleading requirements of the Florida long-arm statute.

### 3. Due Process

If personal jurisdiction is sufficiently pled under the state statute, the Court must then determine whether jurisdiction satisfies the requirements of the Due Process Clause. U.S. Const. amend. V; *see Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1355 (Fed.Cir.2002). "The Due Pro-

cess Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Avocent Huntsville Corp. v. Aten Intern. Co.,* 552 F.3d 1324, 1329 (Fed.Cir.2008) (citing *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The defendant's conduct and connection with the forum State have to be such "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

These principles are applied to different forms of personal jurisdiction, specific and general jurisdiction. Specific jurisdiction attaches only to suits arising from a defendant's contact with the forum, whereas general jurisdiction can more broadly attach to suits unrelated to defendant's contacts with the forum. See *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 n. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Roblor asserts both general and special jurisdiction over Intelligolf. (Roblor Resp. to Intelligolf Mot. to Dismiss 15, 16). We find that neither basis for jurisdiction exists.

*(a) Specific Jurisdiction*

Where specific jurisdiction is asserted, the inquiry is "whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp.,* 552 F.3d at 1332.

*i. Activity Purposefully Directed to the Residents of the Forum*

■ We agree with Intelligolf that the first prong of the inquiry, the existence of activities purposefully directed at residents of the forum, is dispositive. (Intelligolf's Mot. to Dismiss 13). The only contact that Intelligolf has with Florida is its website, which, at best, led to one sale in the state after the litigation ensued. That is hardly enough by any applicable measure.

In order to find jurisdiction based on the existence of a website, some courts have accepted that a "highly transaction-oriented website" may by itself give rise to personal jurisdiction, referring to the "sliding scale" analysis adopted by one district court. See *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.,* 395 F.3d 1275, 1281 (Fed.Cir.2005). *Zippo Manufacturing* explained the sliding scale analysis as follows:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well [-]developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the oppo-

site end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the [propriety of the] exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

This sliding-scale analysis assesses the sufficiency of minimum contacts by measuring the degree of activity or passivity of the website. If we strictly follow this analysis, Intelligolf's website occupies this "middle ground" and qualifies as "interactive." The website is not entirely active. Intelligolf does not sell the infringing software on its website but merely provide links to a number of resellers and distributors. Intelligolf's website is not passive either where the website offers passive advertising of its products together with these active links that allow the user to purchase the necessary software.

When a website is interactive, the exercise of jurisdiction is determined by examining (1) "the level of interactivity" and (2) "the commercial nature of the exchange of information that occurs on the Web site." *Id.* at 1124. The level of interactivity, here, is low. Intelligolf's website invites the customers to use the resellers' and distributors' websites in order to buy the allegedly infringing products. The customers willing to buy cannot do so through Intelligolf's website itself. Intelligolf's website does not invite the customers to use Intelligolf's e-mail or telephone number to purchase the products. One aspect of the website is interactive: the possibility of creating an account. The creation of an account, in turn, allows Intelligolf to send advertising e-mails to its registered customers. In order to create the account, the account holder is required to agree to a click-wrap license, which provides that any suit arising out of the agreement should be brought only in a state or federal court of competent jurisdiction located in Sacramento, California. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2–A). While the click-wrap license cannot bind a third party like Roblor, it nevertheless shows Intelligolf's intention not to avail itself of a jurisdiction based on the use of the accounts other than in the state of California. Therefore, we find that this interactive feature cannot, by itself, constitute a sufficient contact with the state Florida.

The nature of information, the second prong of the analysis of an interactive website under *Zippo*, on the other hand, is purely commercial. However, there is no *exchange* of information regarding the sale of the software *per se* as the customers can access the information but cannot communicate with Intelligolf through Intelligolf's website. Accordingly, with a poor level of interactivity and in the absence of commercial exchange of information, we find that personal jurisdiction would not be warranted under a pure sliding scale analysis.

However the Federal Circuit has not yet addressed what weight, if any, should be given to the sliding scale of interactivity analysis. Other circuits have addressed the issue.

Some circuits have embraced this analysis. *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 452 (3d Cir.2003) (recognizing the *Zippo case* as a "seminal

authority regarding personal jurisdiction based upon the operation of an Internet web site"); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999) (adopting the sliding scale analysis to assess *general* jurisdiction, even though the Fifth Circuit later recognized that the *Zippo* analysis is not always "well adapted to the general jurisdiction inquiry" *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir.2002)); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir.1997) (finding that "the common thread, well stated by the district court in *Zippo*, is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.' ").

Some circuits have adopted the sliding scale of interactivity as one factor among others to define the purposeful availment factor. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir.2002) (adopting and adapting the sliding scale analysis); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002); *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir.2003) (holding that the "Zippo model is an appropriate approach in cases of specific jurisdiction").

Where the *Zippo* model has not been expressly adopted, some circuits, including the Federal Circuit, nevertheless have recognized the distinction between active, passive and interactive websites as one factor, among others, used to determine the appropriateness of personal jurisdiction over a defendant. *See McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir.2005) ("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum ... Something more is necessary, such as

interactive features which allow the successful online ordering of the defendant's products."); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549–50 (7th Cir.2004) (holding that "Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country"); *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir.1999) (drawing the distinction between active, passive and interactive websites to assess general jurisdiction); *Trintec Indus., Inc.*, 395 F.3d at 1281 ("Although [plaintiff] has shown that [defendant]'s websites contain some interactive features aimed at transacting business, it is unclear how frequently those features are utilized or, indeed, whether any District residents have ever actually used [defendant]'s website to transact business").

While many circuits have adhered to the sliding scale analysis, others have opted for a more restrictive reading of the *Zippo* case. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir.2007) (holding that while the sliding scale analysis may "help frame the jurisdictional inquiry in some cases ... 'it does not amount to a separate framework for analyzing internet-based jurisdiction.' ... Instead, 'traditional statutory and constitutional principles remain the touchstone of the inquiry' ... As the *Zippo* court itself noted, personal jurisdiction analysis applies traditional principles to new situations").

Finally, some circuits disfavor the use of the sliding scale analysis to assess personal jurisdiction. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510–511 (D.C.Cir.2002) (opting for the traditional notions of personal jurisdiction when as-

sessing general jurisdiction on the ground that " 'Cyberspace' ... is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks and mortar. Just as our traditional notions of personal jurisdiction have proven adaptable to other changes in the national economy, so too are they adaptable to the transformations wrought by the Internet").

We should note that the Eleventh Circuit has recently acknowledged the criticism surrounding the *Zippo* case:

> While many courts have utilized the *Zippo* test in one form or another, scholars have generally been critical of the *Zippo* construct. One commentator has argued that *Zippo*'s interactivity litmus test is inconsistent with traditional due process analysis because it excludes all "passive" websites from supporting personal jurisdiction even though the level of interactivity is of minimal significance with respect to whether a defendant has directed the website towards the forum. A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network–Mediated Contacts*, 2006 U. Ill. L.Rev. 71, 86–103 (2006). Rather than utilizing such an artificial approach, Professor Spencer argues that courts should simply apply traditional analysis-looking to whether (1) the defendant directed the internet activity into the state, (2) the internet contact gave rise to the cause of action, and (3) the exercise of jurisdiction is constitutionally reasonable. *Id.* at 109–11. Another commentator, although arguing that the traditional personal jurisdiction approach should yield in the Internet context, has noted that *Zippo*'s interactivity model is somewhat unpredictable and should be modified to preserve the constitutionally required "foreseeability" and "fairness" principles. *See Reid, supra* at 259–62. Under the proposed modified approach, a finding that the website was highly interactive

for purposes of *Zippo* would only give rise to a presumption of purposeful availment, allowing a defendant to proffer evidence that it was not purposefully targeting the forum. *See id.*

*Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1220 (11th Cir.2009). While this opinion discussed the *Zippo* case and the criticisms surrounding it, it declined to express a firm opinion as to its applicability.

The district courts in the Eleventh Circuit are split on the issue. Some have fully applied *Zippo* as persuasive precedent. *See Alternate Energy Corp. v. Redstone,* 328 F.Supp.2d 1379, 1382 (S.D.Fla. 2004) (citing Florida courts having applied the *Zippo* analysis); *Miller v. Berman,* 289 F.Supp.2d 1327, 1335 (M.D.Fla.2003) (citing the *Zippo* case and concluding that "[i]n order to determine whether personal jurisdiction can be exerted over Defendants in this instance the Court must examine the nature of the interaction between Mr. Miller and Defendants over the Internet"); *Foreign Imported Productions and Pub., Inc. v. Grupo Indus. Hotelero, S.A.,* 2008 WL 4724495, at *8 (S.D.Fla. Oct. 24, 2008) (citing *Zippo* and assessing jurisdiction pursuant to the nature of the defendant's website). Other district courts have departed from the *Zippo* approach, arguing that "website interactivity may have some bearing on the jurisdictional analysis, but it is not determinative." *Instabook Corp. v. Instantpublisher.com,* 469 F.Supp.2d 1120, 1125 (M.D.Fla.2006).

We share in the criticism of over-reliance on the sliding scale of interactivity analysis. The sliding scale offers little guidance in the case of a defendant running a website that falls in the middle ground. Moreover, this test is likely to be too rigid with regards to the passive and active categories of websites. Passive websites could very well target a specific

forum state and give rise to personal jurisdiction. Similarly, an active website, which does not target a forum state, should perhaps not give rise to personal jurisdiction by itself. That is the outcome reached in the *Toys "R" Us* case. *Toys "R" Us, Inc.*, 318 F.3d at 454. The Third Circuit found that the defendant's website, "while commercial and interactive," did "not appear to have been designed or intended to reach customers [in the forum state]." *Id.* The website was entirely in Spanish, the prices based on foreign currency, and merchandise could only be shipped within Spain. In that respect, the sliding scale analysis was inappropriate.

We find it significant that the *Zippo* court, as it was creating the sliding scale analysis, ultimately did not rely on it. *Zippo Mfg. Co.*, 952 F.Supp. at 1125–27; *Best Van Lines, Inc.*, 490 F.3d at 251 (2d Cir.2007) (observing that the *Zippo* court relied on the actual interactions of the defendant with the forum residents). From this it seems that many courts may have given more dispositive weight to the sliding scale analysis than the *Zippo* court itself intended to do.

■ Critics of the *Zippo* sliding scale analysis advocate a return to purely traditional notions of personal jurisdiction. *See Gorman*, 293 F.3d at 510–511 (D.C.Cir. 2002); A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network–Mediated Contacts*, 2006 U. Ill. L.Rev. 71, 86–103 (2006). We doubt, however, that the *Zippo* court meant to forgo these traditional notions to the exclusive control of the sliding scale analysis. To the contrary, *Zippo* did analyze whether the defendant purposefully availed itself of doing business in the forum state and pointed out that: "[t]raditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper ... Different results should not be reached simply because business is conducted over the Internet." *Zippo Mfg. Co.*, 952 F.Supp. at 1124. Accordingly, the sliding scale analysis should be used as a tool to determine the purposeful availment of a defendant to a forum but not as an exclusive "separate framework." [4]

Given no clear holding on the issue from the Federal Circuit and the divergent outcomes reached among the circuits, we decline to find that our determination under the sliding scale analysis is dispositive. We should use it as a guidepost but also turn to analyze the purposeful availment requirement under a more traditional approach. The outcome of that broader traditional analysis, however, is the same.

■ To assess whether Intelligolf purposefully availed himself of the Florida forum, we need to analyze both its website activity as well as its actual interactions with the state of Florida. As we have seen, the actual interaction consists of one single sale in Florida. On its face, the website activity is not purposefully directed at Florida. The number of Florida golf courses featured is not greater than the number of any other state golf courses. Florida residents are not specifically tar-

---

4. Judge Jordan from our Court appears to have taken that view in a case where the sliding scale analysis was cited to establish general jurisdiction over a non-resident defendant that maintained an interactive website. "Indeed, while the law may still be unsettled in the Eleventh Circuit, other circuits have required that for personal jurisdiction to be based on a website—even an interactive one— it must be shown that the owner of the website manifestly intended to target citizens of the forum state." *Estate of Fraser v. Smith*, 2007 WL 5007084, at *8 (S.D.Fla. Nov. 13, 2007) (dismissing case based on lack of personal jurisdiction despite the existence of the interactive website because there was no record of any targeting of Florida residents).

geted. On the record before us, there is only one account created by a Florida resident. The presence of active links on Intelligolf's website is not, and should not be, enough. We agree that "the fact that the website of a company that sells products in Florida can be reached via a link on Intelligolf's website is too narrow a thread on which to find a meaningful 'contact' for the purposes of due process." *Dynetech Corp. v. Leonard Fitness, Inc.,* 523 F.Supp.2d 1344, 1347 (M.D.Fla.2007).

■ Finally, the key element to the due process analysis is foreseeability. "The defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559. There must be some degree of predictability "that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* In this case, Intelligolf could not have foreseen being haled in Florida. Intelligolf is not licensed to do business in Florida and has no actual interaction with Florida. Intelligolf has no knowledge of any sale in Florida prior to this law suit. There is no evidence in the record that Intelligolf has any offices, retail stores, agents, resellers and distributors in Florida. Intelligolf has never targeted Florida residents through an advertising campaign. It does not appear that Intelligolf hold any bank account or investments in Florida, nor paid taxes here. Intelligolf has not contracted with any internet service provider in Florida. It is simply not reasonable to find that Intelligolf could have predicted being haled in Florida due to the mere accessibility of its website throughout the country, at least without record evidence of regular and continuous use of that website by Florida customers, or without manifest attempts by Intelligolf to target those customers in Florida.

Accordingly, even though the analysis applicable to website activity for purposes of personal jurisdiction is not well-settled, our analysis concludes that the type of website that Intelligolf maintains does not give rise to specific personal jurisdiction in Florida regardless of how that sliding scale issue ultimately pans out.

Moreover, even assuming *arguendo* that the first prong of the traditional due process inquiry was met, we would still need to satisfy the second and third prongs to assert specific jurisdiction over Intelligolf. They too have not been met in this case.

### ii. Intelligolf's Forum–Related Activities

To assert specific jurisdiction, the claim asserted by Roblor must arise out of Intelligolf's forum-related activities. However, there is no evidence of any forum-related activities by Intelligolf, except through its website. Intelligolf cannot sell the infringing software through its own website, therefore Roblor could not have done so in Florida. Roblor has not established that Intelligolf had resellers and distributors in Florida nor that it had any control over their activity in Florida. Intelligolf's website does feature downloadable Florida golf courses, and the infringing software may have been used in Florida; however, Roblor has not presented any evidence of it. Finally, the record does not show that Intelligolf's website advertising targets Florida.

Therefore we find that Intelligolf's Florida-related activities are insufficient to meet the second prong of this inquiry.

### iii. Reasonableness and Fairness

"With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the

Supreme Court in *Burger King.*" *Avocent Huntsville Corp.*, 552 F.3d at 1332; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The five *Burger King* factors to weigh are: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.*

We find that the burden on Intelligolf to litigate in Florida would be substantial where Intelligolf is a small business with only three shareholders. We agree that for Craig Schmidt, who is the sole employee, to litigate this case in Florida may pose an unreasonable burden. Considering the very few contacts Intelligolf has with Florida, the state of Florida's interest in the issue is limited. Even though it would be more convenient for Roblor's counsel to obtain relief in Florida, this insignificant convenience is far outweighed by Intelligolf's burden to litigate here. The last factor does not weigh in favor of any party. In sum, the relevant factors weigh in favor of Intelligolf's position that jurisdiction over Intelligolf here would be neither reasonable nor fair.

*(b) General Jurisdiction*

"[A]n assertion of *general* jurisdiction requires that the defendant have continuous and systematic contacts with the forum state, and that such activity will confer [ ] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." *Avocent Huntsville Corp.*, 552 F.3d at 1331–32 (quotations omitted). "[T]hese contacts must be 'so

substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities.'" *In re Farmland Indus., Inc.*, 2007 WL 1018367, at \*3 (M.D.Fla. March 20, 2007) (citing *Hockerson–Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed.Appx. 322, 337 (Fed.Cir.2003)).

There is *nothing* in the Motion to dismiss record evidencing Intelligolf's continuous and systematic contacts with Florida. Intelligolf is not licensed to do business in Florida. Intelligolf has no address, office, or employees in Florida. Intelligolf never had any physical presence of any kind in Florida. (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C–19). No advertising or marketing has been directed at Florida. (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C–19). There is only one Intelligolf product identified as being sold in Florida. (Intelligolf's and Karrier's Revised Mot. to Dismiss Ex. C; 18–19; Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2–A; B; C; D). However, this product was not sold by Intelligolf, but by a reseller. Additionally, this reseller is not located in Florida. In any event, a single sale cannot meet the "continuous and systemic contacts" requirement. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed.Cir.2008) (finding that "there was no basis for exercising general jurisdiction over the defendants [in the State of Washington] in light of the fact they had only made 12 sales" there, which reflected "far less than the required 'continuous and systematic' contacts").

Intelligolf's only continued contact with Florida, if any, is its website, which provides passive advertising of the Intelligolf products as well as marketing links to a number of resellers and distributors of Intelligolf products.[5] (Intelligolf's Mot. to

---

**5.** The Fifth Circuit held that the *Zippo* analysis could be used to assess general jurisdic-

tion. *Mink v. AAAA Dev. LLC*, 190 F.3d 333,

Dismiss Ex. D; G; H). Moreover, none of these resellers and distributors are located in Florida. The downloadable golf courses maps featured by the website are not specifically targeting Florida residents. (Roblor's Resp. to Intelligolf's Mot. to Dismiss Ex. 2–C). Accordingly, it appears that Florida customers are not specifically targeted by Intelligolf's website. (Intelligolf's Mot. to Dismiss Ex. D). The maintenance of a website that is not specifically directed at the customers of the state where plaintiff seeks jurisdiction cannot give rise to general jurisdiction. *Campbell Pet Co.*, 542 F.3d at 884; *Trintec Indus., Inc.*, 395 F.3d at 1275; *Estate of Fraser*, 2007 WL 5007084, at \*8.

Therefore, we find that Intelligolf does not have continuous and systematic contacts with Florida and that general jurisdiction cannot be asserted over Intelligolf.

And, accordingly, we find that under the due process clause we cannot exercise either specific or general jurisdiction over Intelligolf. Intelligolf's motion to dismiss, based on lack of personal jurisdiction, must then be granted.

### B. Dismissal Based Upon Improper Venue

 Having found that Roblor cannot assert personal jurisdiction over Intelligolf, we do not need to consider venue. Moreover, both parties agree that the personal jurisdiction and the proper venue inquiries coalesce. (Intelligolf's Mot. to Dismiss 20–21; Roblor's Resp. to Intelligolf's Mot. to Dismiss 21). Indeed, pursuant to Rule 28 U.S.C.A. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has commit-

ted acts of infringement and has a regular and established place of business." 28 U.S.C.A. § 1400(b). Further, to determine venue in a suit against a corporation, § 1400(b) must be read in conjunction with the general corporation venue statute, 28 U.S.C.A. § 1391(c). *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed.Cir.1990). According to 28 U.S.C.A. § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Therefore, "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec Indus., Inc.*, 395 F.3d at 1280 (citing *VE Holding Corp.*, 917 F.2d at 1583 (Fed.Cir.1990)). As we have determined that Intelligolf is not subject to personal jurisdiction in the Southern District of Florida, it is not a resident for purposes of § 1400(b) and venue would be improper.

### III. CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge recommends that Intelligolf's motion [D.E. 68] to dismiss Roblor's complaint for lack of jurisdiction and improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3), be **GRANTED** without prejudice to the complaint be refiled in a court having personal jurisdiction over Intelligolf and in a district with proper venue. Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the

336 (5th Cir.1999). However, the Court later recognized that the *Zippo* analysis is not always "well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir.2002).