### GOVERNMENT OF EGYPT PROCUREMENT OFFICE

v.

### M/V ROBERT E. LEE, et al.

### No. CIV.A. WMN–01–2404.

United States District Court, D. Maryland.

May 21, 2002.

James D. Skeen, David W. Skeen, Wright Constable and Skeen LLP, Baltimore, MD, for Plaintiff.

JoAnne Zawitoski, Alexander M. Giles, Semmes Bowen and Semmes PC, Baltimore, MD, for Defendants.

## *MEMORANDUM*

NICKERSON, District Judge.

Before the Court is Defendant Waterman Steamship Corporation's Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer Pursuant to 28 U.S.C. §§ 1406(a) or 1404(a). Paper No. 15. The motion has been fully briefed and is ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion will be granted, in that the case will be transferred to the United States District Court for the Eastern District of Louisiana at New Orleans.

This admiralty action arises out of an agreement between Plaintiff Government of Egypt Procurement Office ("EPO") and Defendant Waterman Steamship Corporation ("Waterman") for the transportation

of military cargo on the ship M/V ROBERT E. LEE. Waterman, a New York corporation with its principal place of business in New Orleans, is in the business of operating cargo ships worldwide. EPO is a foreign governmental entity with its place of business at the Egyptian Embassy in Washington, D.C. Under the foreign aid program with the United States, EPO purchases military equipment from the U.S. for export to Egypt.[1] The factual allegations in the Complaint are summarized as follows:

On or about May 14, 1998, at Alexandria, Egypt, Waterman accepted Plaintiff's cargo shipment of two military helicopters "in good order and condition," for direct transportation on Defendant's ship M/V ROBERT E. LEE to the Port of New Orleans, for ultimate delivery in Panama City, Florida.[2] Complaint at ¶ 6. On or about August 27, 1998, the helicopters arrived in Panama City, Florida "seriously damaged and depreciated in value." *Id.* at ¶ 7. According to Plaintiff, delivery was significantly delayed due to Defendant's deviation from an agreed-upon direct route. *Id.* at ¶ 8. In a later pleading, Plaintiff alleges that Defendant took the helicopters to Singapore, where the M/V ROBERT E. LEE remained in a repair yard for some time, and then back to Alexandria, before sailing to New Orleans—a trip taking 75 days longer than the anticipated route. *See,* Pl.'s Opp. at 5. Plaintiff states that upon the helicopters' arrival in Panama City, the barge in which they were stowed was opened, revealing eight

inches of water and damage to the cargo. *Id.* at 6.

Plaintiff filed suit in this Court on August 14, 2001, and Defendant moved for dismissal on the ground that venue in Maryland is improper. In support of its choice of Maryland as a forum, Plaintiff has stated that in order to facilitate its purchases and transport of military equipment under the foreign aid program, EPO leases a warehouse in Maryland, where EPO employs an agent, Panalpina, Inc., to arrange for the cargo transports. *See,* Pl.'s Opp. at 3–4. A vice president of Panalpina testifies that Waterman has carried "numerous shipments" that were booked through the Maryland facility,[3] and that the facility was the location of "[s]ome of the negotiation" by a Waterman sales representative for the contract that governed the helicopter shipment at issue. Pl.'s Opp. at Exh. 1, ¶ 4 (Aff. of Rainer Wildenhain). In addition, Plaintiff has provided evidence that Waterman is listed in shipping directories in Maryland. *See,* Pl.'s Opp. at Exh. 3–6. Defendant, however, points out that the M/V ROBERT E. LEE was never present in the port or waters of Baltimore, that no parties to the suit reside in Maryland, and that the contract in question was signed outside Maryland.

■■■■ Admiralty actions brought under Fed.R.Civ.P. 9(h) are exempt from the requirements of 28 U.S.C. § 1391, which normally governs the propriety of venue in civil actions. Fed.R.Civ.P. 82. Instead,

---

1. Occasionally, the equipment is shipped back to the U.S. for repairs or refurbishment, as was the case with the cargo in the instant action.

2. The cargo was then transported by truck to Dothan, Alabama, by Trucking Southern Style ("TSS"), also named as a Defendant in the Complaint. TSS has neither answered the Complaint nor filed any pleadings, and Plain-

tiff has indicated its intent to dismiss TSS from this action.

3. Testimony that Waterman received certain revenues from shipments booked through the Maryland facility in 2001 are not relevant to the Court's inquiry, which must focus only on Defendant's contacts with Maryland at the time of the alleged injury.

the court determines whether venue is proper in an admiralty action by assessing whether there is personal jurisdiction over the defendant. *See,* Schoenbaum, *Admiralty and Maritime Law,* 3d. ed. § 2110 at 553; *In Re Louisville Underwriters,* 134 U.S. 488, 10 S.Ct. 587, 33 L.Ed. 991 (1890). The burden of showing that the court has personal jurisdiction lies with the plaintiff, *see, Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989), as does the burden of showing that venue is proper. *See, Bartholomew v. Virginia Chiropractors Association,* 612 F.2d 812, 816 (4th Cir.1979), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980), overruled on other grounds by *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982).

A federal court "has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir.1993). Maryland's long arm statute states that Maryland courts have personal jurisdiction over any defendant that "transacts any business or performs any character of work or service in the State." Md.Code Ann. Cts. & Jud. Proc. § 6–103(b)(1). It has long been recognized that this provision of the statute provides jurisdiction to the full extent permitted by due process. *Id.; McGann v. Wilson,* 117 Md.App. 595, 701 A.2d 873 (1997). Thus, the Court need only determine whether subjecting Defendant to suit in Maryland would be consistent with the Due Process Clause of the Fourteenth Amendment.

■ For this Court to exercise personal jurisdiction over Defendant, due process requires that it have at least "minimum contacts" with Maryland "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Physical presence within the forum state is not required to establish personal jurisdiction over a non-resident defendant. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Jurisdiction is also established if it can be shown that the defendant has purposefully directed its activities towards the residents of the forum state, *id.* at 472, 105 S.Ct. 2174, or otherwise "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ A court may exercise either general or specific jurisdiction. General jurisdiction, which permits a court to subject a non-resident defendant to a suit in the forum state wholly unrelated to any contact it has with that forum, exists only where the foreign defendant's in-state activities amount to "continuous and systematic" contact with the state. *Id.* at 314–15, 66 S.Ct. 154. Specific jurisdiction exists where the suit arises from a defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The level of "minimum contacts" necessary to confer specific jurisdiction is significantly lower than that required for general jurisdiction. *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir.1997), *cert. denied,* 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998). Specific jurisdiction exists when the "contacts related to the cause of action . . . create a 'substantial connection' with the forum state. . . ." *ESAB Group,* 126 F.3d at 625 (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). The defendant's activities must be purposefully directed at the forum state "in more than a random,

fortuitous, or attenuated way." *ESAB Group*, 126 F.3d at 625 (citing *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (1985)). The Supreme Court has held that even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of "fair play and substantial justice" is observed. *Burger King*, 471 U.S. at 477–78, 105 S.Ct. 2174.

The facts of this case present a close question as to personal jurisdiction. Neither the M/V ROBERT E. LEE nor the cargo in question were ever in this Court's jurisdiction, and it is undisputed that Defendant does not maintain any office, property, bank accounts, or permanent sales representatives in Maryland. Defendant has also submitted a copy of the contract with EPO, which indicates that it was signed in Washington, D.C., and contains no reference to Maryland or any acts to be performed in Maryland. *See*, Def.'s Reply at Exh. I. On the other hand, Defendant is listed in several Baltimore area shipping directories. *See*, Pl.'s Opp. at Exh. 3–6. A vice president of EPO's agent in Maryland testified that Waterman had sent sales representatives to Maryland "numerous times" over the years, to negotiate contracts with EPO officers, that Waterman had carried "numerous shipments" booked through the Maryland facility, and that "[s]ome of the negotiation" on the contract at issue in this case occurred with a Waterman sales representative in Maryland.[4] *Id.* at Exh. 1, ¶ 3, 4. The particular bill of lading governing the shipment of

helicopters, however, was issued in Egypt and made no mention of Maryland. See, Pl.'s Mot. at Exh. A (Bill of Lading) and B (Affidavit of Peter M. Johnston).

■ Applying the personal jurisdiction analysis to the facts of this case, the Court finds that Plaintiff has not met its burden of showing either specific or general jurisdiction. That Defendant occasionally sent a sales representative to Maryland for negotiations and maintained listings in directories does not constitute the kind of continuous, systematic, or extensive activity in Maryland necessary to create general jurisdiction. *See, The Harry and Jeanette Weinberg Foundation, Inc. v. ANB Inv. Mgt. and Trust Co.*, 966 F.Supp. 389, 391–92 (D.Md.1997) (noting that "the Fourth Circuit has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there"); *see also, Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir.1971), *cert. denied*, 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971). Specific jurisdiction is a closer question, because "some" of the negotiation for the EPO–Waterman contract occurred in Maryland, but neither the bill of lading, nor the ship's voyage, nor the alleged damage to the cargo, nor any other aspect of this litigation, has any other connection to this state.[5] To find specific jurisdiction here would not be consistent with the principles of "fair play and substantial justice" that form the bedrock of personal jurisdiction. *See, Cape v. von Maur*, 932 F.Supp. 124, 126 (D.Md.1996).[6]

---

**4.** Defendant argues that this affiant lacks personal knowledge to support his assertions, and thus that the affidavit should be stricken. The Court will deny this request, having found that the affidavit-though skimpy-is sufficiently reliable.

**5.** The Court also notes that Plaintiff has provided no evidence as to which party initiated negotiation in Maryland. Whether the defendant initiated business relations in the forum

state has been held to be a strong factor in personal jurisdiction analysis. *See, Nueva Engineering, Inc. v. Accurate Electronics, Inc.*, 628 F.Supp. 953, 955 (D.Md.1986), and cases cited therein.

**6.** Plaintiff has requested that, if this Court finds personal jurisdiction lacking, Plaintiff be granted more time to conduct discovery on Defendant's contacts with Maryland. The

Having found that there is no personal jurisdiction over Defendant, and therefore that venue is improper, the Court must decide whether to dismiss the case or transfer it to another district. Under 28 U.S.C. § 1406(a), a district court faced with a case where venue is improper "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[7] Courts generally favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants, which is not the case here. *See,* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Practice and Procedure: Jurisdiction* 2d § 3827.

The decision to transfer is committed to the sound discretion of the trial court. Motions to transfer should be determined on an individualized, case-by-case basis. *Stewart Org. Inc. v. Ricoh,* 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). The court should consider "private factors" such as the convenience of obtaining witness testimony and physical evidence, as well as "public factors" such as the forum's public policy interest in hearing the case. *See, Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

■ The Court recognizes that there is no highly convenient forum for a case such as this, with witnesses located around the globe. Both parties anticipate calling witnesses from Egypt, Cyprus, and Great Britain, to testify about the loading of cargo in Alexandria. The other central witnesses in this case, however, are located either in New Orleans or much closer to New Orleans than to Baltimore. For example, the surveyors for both parties, who examined the cargo and the condition of the barge in Panama City and in Dothan, Alabama, are located in New Orleans, Louisiana; St. Louis, Missouri; Panama City, Florida; Dothan, Alabama; Mandeville, Louisiana; and Chicago, Illinois. *See,* Pl.'s Reply at Exh. D–G (surveyor reports). Numerous crew members on the ROBERT E. LEE were engaged for the trip in New Orleans and presumably are more likely to be located again there than in Baltimore, which is not a port of call for any of Waterman's ships. *See, id.* at Exh. H (crew lists).

In contrast, although EPO anticipates calling some witnesses from the Baltimore/Washington D.C. area, they are small in number and appear to play a more peripheral role in the lawsuit. Unlike the foreign and Louisiana-area witnesses, the Maryland-area witnesses would not have immediate, personal knowledge of the ship's voyage or the condition of the cargo before, during, and after the trip. EPO and Panalpina witnesses would presumably have information about paperwork for the shipment, and contract negotiations with Waterman. One Baltimore witness, Mr. Withers Davis, testified that he handled EPO's insurance claim for the helicopters but does not indicate the extent of his familiarity with the alleged damage or its potential causes. *See,* Pl.'s Opp. at Exh. 2 (Aff. of Withers Davis).

Considerations of public policy also weigh in favor of transferring the case to

---

Court notes, however, that despite three extensions of time granted by this Court, Plaintiff's counsel failed to submit any evidence from their own client as to the extent or nature of contact EPO has had with Waterman in Maryland. The Court does not find that granting time for additional discovery would be fruitful or appropriate in this case.

7. This statute authorizes a district court to transfer a case, even if it lacks personal jurisdiction over the defendant. *See, Goldlawr v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); Wright, Miller & Cooper, *Fed. Practice and Procedure: Jurisdiction* 2d § 3827 at 263.

New Orleans. Although Plaintiff asserts that Maryland has "an interest in assuring that ocean carriers live up to their agreements with shippers," Plaintiff has not demonstrated why Maryland has a particular interest in *this* lawsuit. None of the parties are Maryland citizens, and very little of the relevant activity occurred in Maryland. Defendant's shipping operations are based in New Orleans, the cargo was shipped there, the bill of lading specifies New Orleans as the port of discharge, and many key witnesses are located in or near that city. Certainly New Orleans and Louisiana have more of a public policy interest in this dispute than does Maryland. Having weighed the relevant private and public factors, and recognizing that Plaintiff is not a resident of this forum, the Court concludes that transfer pursuant to 28 U.S.C. § 1406(a) is appropriate.[8]

For the foregoing reasons, this Court will grant Defendant's motion, in that this action will be transferred to the United States District Court for the Eastern District of Louisiana at New Orleans. A separate order will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this day of May, 2002, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant Waterman Steamship Corporation's Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer Pursuant to 28 U.S.C. §§ 1406(a) or 1404(a) (Paper No. 15) is hereby GRANTED, in part; in that the Clerk of the Court shall transfer this case to the United States District Court for the Eastern District of Louisiana at New Orleans; and

2. That the Clerk of the Court shall mail or transmit copies of the foregoing Memorandum and this Order to all counsel of record.

---

**8.** Were the Court to have found sufficient basis for personal jurisdiction, and thus venue, in this matter, the Court would still conclude that transfer to New Orleans would be warranted, pursuant to 28 U.S.C. § 1404(a), for the same reasons as stated above.