PROTOTYPE PRODUCTIONS, INC., et al., Plaintiffs,

v.

RESET, INC., Defendant.

Civil Action No. 2:11cv196.

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 5, 2012.

Benjamin G. Chew, Patton Boggs LLP, Washington, DC, for Plaintiffs.

Robert Emmett Scully, Jr., Stites & Harbison, PLLC, Alexandria, VA, Mark David Nielsen, Cislo & Thomas LLP, Santa Monica, CA, for Defendant.

### ORDER

RAYMOND A. JACKSON, District Judge.

This mailer is currently before the Court on two objections to the Magistrate Judge's report and recommendation.

Plaintiffs, Prototype Productions, Inc. and Prototype Productions Incorporated Ventures Two, LLC (collectively "Prototype"), brought a claim against Defendant Reset, Inc. ("Reset") alleging patent infringement under 35 U.S.C. § 271. On May 31, 2011, Defendant filed a Motion to Dismiss for Lack of Jurisdiction or Transfer. If the Court found that the record was insufficient to provide personal jurisdiction over the Defendant, the Plaintiffs have requested jurisdictional discovery. This Court, on August 11, 2011. entered an order designating United States Magistrate Judge F. Bradford Stillman ("Magistrate Judge Stillman") to conduct hearings and submit proposed findings of fact and, if applicable, recommendations for the disposition of this case.[1] On October 31, 2011. Magistrate Judge Stillman filed his report and recommendation ("the Report") in which he recommended that Defendant's Motion to Dismiss or Transfer be GRANTED IN PART and DENIED IN PART, and further recommended that the case be TRANSFERRED to the Central District of California. Magistrate Judge Stillman also DENIED Plaintiffs' request for jurisdictional discovery. The Report also advised the parties of their right to file written objections to the findings and recommendations the Magistrate Judge made. On October 31, 2011, Plaintiffs filed objections to the Report and on November 14, 2011, Defendant filed its opposition to Plaintiffs' objections to the Report.

Under Rule 72(b)(3) of the Federal Rules of Civil Procedure, a judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b)(3). The phrase "de novo determination", as used in Rule 72, means that a district court judge must give "fresh consideration" to portions of the magistrate judge's report and recommendation. *United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). In other words, " 'the Court should make an independent determination of the issues' and should not give any special weight to the prior determination.' " *Id.* (quoting *United States v. First City Na-*

---

1. Under 28 U.S.C. § 636(b)(1)(B), "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition ..."

*tional Bank*, 386 U.S. 361, 368, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967)). "The district judge may accept, reject, or modify the recommended decision; receive further evidence; or recommit the matter to the magistrate judge with instructions." Fed. R.Civ.P. 72(b)(3).

Plaintiffs' only two objections to the Report involve Magistrate Judge Stillman's grant of Reset's motion to transfer and denial of Prototype's request for jurisdictional discovery. Prototype contends that their asserted facts establish specific personal jurisdiction over Reset. They believe that they have made a *prima facie* showing that Reset has purposefully marketed and solicited products at the Commonwealth. Pl's. Objs. U.S. Mag. Judge R & R 16, ECF No. 27. It is not Prototype's only claim that Reset itself has conducted activities which purposefully avail it of jurisdiction in the Commonwealth, but it is the activities of Reset and its alleged agents which prove jurisdiction.

■ "When commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 n. 22, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Prototype points to Reset's purported agency or partnership relationships with Laser Devices, ATK, and Lewis Machine as justification for attributing their actions to Reset. Pl's. Objs. R & R 17. Reset has

previously described Laser Devices, ATK, Lewis Machine as its "Teaming Partners", and Prototype believes such descriptions justify attributing the actions of these entities to Reset. *Id.* at 18.

■ The central question the Court must answer is whether Laser Devices, ATK, and Lewis Machine are agents of Reset whose actions essentially become Reset's actions.[2] "In determining whether a person is the agent of another, it is necessary that he not only be subject to the latter's control, or right of control, with regard to the work to be done and the manner of performing it, but the work has to be done on the business of the principal or for his benefit." *Whitfield v. Whittaker Mem'l Hosp.*, 210 Va. 176, 169 S.E.2d 563, 567 (1969). "If an agency relationship exists, the critical test is the nature and extent of control exercised by the purported principal over the agent." *Butterworth v. Integrated Res. Equity Corp.*, 680 F.Supp. 784, 789 (E.D.Va.1988) (citation omitted).

■ Prototype has provided the Court with little to no evidence, other than a press release, to justify their assertion that Lewis Machine is an agent of Reset. Though Lewis Machine has dealers in Virginia, there is no evidence that these dealers sell or market the Rifle Integrated Power Rail ("RIPR") in Virginia. This is facially insufficient evidence to prove that Lewis Machine is Reset's agent.

---

**2.** The Court does not believe there is enough evidence to support a claim that Reset has formed a *legal* partnership with Laser Devices, ATK, or Lewis Machine. While the evidence for such claims stems from Reset's employees using the language of "partnership," there is no legitimate basis for believing that Reset has formed an actual, binding partnership that is of the kind a Court would ordinarily see between two companies. Under the law of the Commonwealth, a partner-

ship is defined as "an association of two or more persons to carry on as co-owners a business for profit formed under § 50–73.88, predecessor law, or comparable law of another jurisdiction...." *See* Va.Code Ann. § 50–73.79. There is no evidence that Reset has formed that type of agreement with Laser Devices, ATK, or Lewis Machine. Therefore, the Court will focus on whether Laser Devices, ATK, and Lewis Machine are agents of Reset.

Now, the Court will turn to the potential agency relationship between Reset and Laser Devices. Reset has provided the Court a copy of its "Teaming Agreement" with Laser Devices. Both Laser Devices and Reset conclude that "[t]his agreement shall not constitute, create, or in any way be interpreted as a joint venture, partnership, agency relationship or formal business organization of any kind." *See* Teaming Agreement 5, ECF No. 33. The plain language of the Teaming Agreement shows that Laser Devices and Reset did not intend to maintain an agency relationship or a partnership. Prototype points to Reset's ability to get Laser Devices to remove a mistaken advertisement from a website as evidence of Reset's control over Laser Devices. The fact that Reset was able to get Laser Devices to tell one of its agents, OpticsPlanet, to remove a faulty advertisement from a website does not constitute an agency relationship.

■ Assuming, *arguendo*, that there exists an agency relationship between Reset and Laser Devices, the Court will address Prototype's other contentions. Prototype claims that Laser Devices, through its vendor, OpticsPlanet, offered RIPR for sale on its website. *Id.* at 23. Based on the record, the Court concludes that the website offer was the unilateral activity of OpticsPlanet with whom Reset has no relationship. Additionally, as soon as Reset was made aware of such sales, it took steps to ensure that the website was modified or taken down.[3] Reset did not authorize the initial action and was completely unaware of it. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).[4]

Prototype also presents the Court with new evidence that was not before Magistrate Judge Stillman when he issued his Report. Specifically, Prototype claims that one week before the Report issued, Reset, through Laser Devices, engaged in marketing and soliciting its RIPR to Virginia residents at an exhibition in Washington, D.C. Pl's. Objs. R & R 1. As the Court has previously noted, it has the discretion to consider new evidence. However, even considering the new evidence which Plaintiffs bring before the Court, there is still insufficient proof to establish a *prima facie* case that Reset has purposefully availed itself of jurisdiction in the Commonwealth. That it is merely likely that residents of Virginia attended an exhibition in Washington, D.C., does not mean that Reset would expect to be haled into court here. There is no evidence that Reset sells its product at all, and the marketing that Prototype claims has taken place in and around the Commonwealth is insufficient. Reset does not have the constitutionally sufficient minimum contacts with the Commonwealth, and as such, the Court will not exercise jurisdiction over it.

■ If the Court finds that Prototype has not made a *prima facie* showing establishing jurisdiction, then Prototype requests the Court order jurisdictional discovery to provide the Plaintiffs more opportunity to meet their burden. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discre-

---

3. The Court further finds no evidence to suggest that the website was modified in an effort to avoid jurisdiction in Virginia. The webpage was removed not only in Virginia but for consumers everywhere. *See* Def.'s Br. Opp'n Pl's. Objs. U.S. Mag. Judge R & R 9.

4. Because the Court finds that ATK, Laser Devices, and Lewis Machine are not partners or agents of Reset, Magistrate Judge Stillman's reliance on *Hanson* is proper.

tion in denying jurisdictional discovery." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402–03 (4th Cir.2003); *see also McLaughlin v. McPhail*, 707 F.2d 800, 806–07 (4th Cir.1983). After analyzing the record and the evidence which Prototype has provided the Court, the Court concludes that Prototype has offered only the type of evidence which amounts to mere speculation and conclusory assertions. That evidence, without more, cannot justify permitting jurisdictional discovery in this case.

Prototype has not provided the Court with any concrete evidence to suggest that Reset has marketed the RIPR to residents of the Commonwealth. It is not enough to say that an exhibit in Washington, D.C. makes it "reasonably likely" that residents of the Commonwealth were targeted. Pl's. Objs. R & R 1. Nor is it enough that the U.S. military's headquarters in Virginia makes it "highly probable" that Reset placed its product into the Commonwealth. Pl's. Opp'n Br. 23, ECF No. 12. These statements highlight the extremely speculative contacts Prototype provides this Court. While disputes in this inquiry should be resolved in the Plaintiffs' favor, the inferences which are required to permit jurisdictional discovery are simply too numerous for this Court to make.

The Court has carefully and independently reviewed the record in this case and the objections to the Report. Having done so, the Court finds that there is no merit to the objections of the Plaintiffs. Accordingly, the Court does hereby accept the findings and recommendations set forth in the Magistrate Judge Stillman's report and recommendations in the case at bar.

It is, therefore, **ORDERED** that Defendant's Motion to Dismiss or Transfer is **GRANTED IN PART** and **DENIED IN PART.** Defendant's Motion to Dismiss is **DENIED** and Defendant's Motion to Transfer is **GRANTED.**

**IT IS FURTHER ORDERED** that this case be **TRANSFERRED** to the Central District of California.

**IT IS FURTHER ORDERED** that Plaintiffs' request for jurisdictional discovery is **DENIED.**

The Clerk of the Court is **DIRECTED** to send a copy of this Order to counsel of record.

**IT IS SO ORDERED.**

### *UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

F. BRADFORD STILLMAN, United States Magistrate Judge.

The Court has before it Defendant RESET, Inc.'s ("RESET") Motion to Dismiss or Transfer. ECF No. 6. Plaintiffs, Prototype Productions Inc. ("PPI") and Prototype Productions Incorporated Ventures Two, LLC ("PPIV2") (collectively "Prototype"), oppose the Motion and, in the alternative, have requested jurisdictional discovery. ECF No. 12. This matter was referred to the undersigned United States Magistrate Judge for a recommended disposition pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by Order of Reference entered August 11, 2011. ECF No. 21. For the reasons stated herein, the Court RECOMMENDS that RESET's Motion be GRANTED IN PART and DENIED IN PART, and further RECOMMENDS the case be TRANSFERRED to the Central District of California. The Court denies Prototype's request for jurisdictional discovery.

## I. *Factual and Procedural History*

█ Prototype initiated this action on April 5, 2011 when it brought a claim against RESET for patent infringement under 35 U.S.C. § 271. ECF No. 1. On May 31, 2011, RESET responded with a motion to dismiss for lack of personal jurisdiction and proper venue,[1] or, in the alternative, to transfer venue to the Central District of California under 28 U.S.C. § 1404(a) or § 1406(a). Prototype timely filed its opposition on June 28, 2011, requesting jurisdictional discovery if this Court finds insufficient evidence to establish personal jurisdiction. ECF No. 12. RESET filed its reply on July 19, 2011. ECF Nos. 14–16. On July 25, 2011, Prototype filed a Notice of Filing to which it appended two additional exhibits intended to supplement its opposition brief to which RESET responded on July 27, 2011. ECF Nos. 17–18. The Court held a hearing on RESET's Motions on August 31, 2011, at which Benjamin Chew, Esq., represented Prototype and Mark Nielsen, Esq., and Robert Scully, Jr., Esq., represented RESET. The official court reporter was Heidi Jeffreys.

PPI is a Maryland corporation with its principal place of business in Ashburn, Virginia. Among other things, PPI designs and develops attachments and accessories for firearms. PPI owns the exclusive license to U.S. Patent No. 7,627,975 (the "Hines Patent"). The Hines Patent protects the Powered Rail (also known as the "electrified handguard"), which, when attached to a firearm, provides a centralized power source for rail-mounted accessories such as flashlights and laser sights. PPI assigned its right to enforce the Hines Patent to PPIV2, a majority-owned subsidiary of PPI. PPIV2 is a Delaware limited liability company with its principal place of business in Ashburn, Virginia. Together, PPI and PPIV2 manufacture and sell the Powered Rail for M4 Carbine and AR–15 based weapon platforms. Their Powered Rail customers include the United States Army.

RESET is a California corporation with facilities located solely in Simi Valley, California. "RESET's primary area of business is refurbishing equipment and manufacturing replacement parts for the telecommunications, medical, and general electronic industries." Puccini Decl. ¶ 5, ECF No. 5 attach. 1. According to Galen Puccini, RESET's Chief Operating Officer, RESET has no offices, employees, agents, real property, or personal property in Virginia. Puccini Decl., ECF No. 5. Nor does it maintain mailing addresses, telephone numbers, fax numbers, answering services, messaging services, or bank accounts in Virginia. *Id.* RESET'S sales activity in Virginia represents 1.5% of the company's total sales since 2008. *Id.*

RESET has developed its own powered rail accessory for firearms, which it calls the "Rifle Integrated Power Rail" ("RIPR"). RESET acknowledges that it intends to market and would like to sell the RIPR to the United States military. RESET's internet homepage advertises the RIPR and links to another webpage devoted to the RIPR, which includes an electronic form and an email address through which visitors can contact RESET for information. RESET has also advertised the RIPR in several press releases, which are also available on the Internet. Neither of RESET's websites nor its press releases list pricing information about the RIPR. According to Mr. Puccini, RESET

---

1. "Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec Indus. v. Pedre Promotional Prods.,* 395 F.3d 1275, 1280 (Fed.Cir.2005). Therefore, in considering RESET's motion to dismiss for lack of personal jurisdiction, the Court need not engage in a separate venue analysis. *Id.*

has not yet sold a single unit of the RIPR because the product is still in development and not ready for sale. Puccini Reply Decl., ECF No. 14 attach. 1. Accordingly, none of the revenue RESET derived from Virginia came from RIPR sales. Puccini Decl., ECF No. 5 attach. 1.

RESET has entered into strategic alliances with Laser Devices, Inc. ("Laser Devices") and Lewis Machine and Tool Company ("Lewis Machine and Tool") to market the RIPR and develop compatible accessories. Both of these companies are headquartered in Illinois and sell products to brick-and-mortar retailers located in the Eastern District of Virginia.

RESET is discussing a similar alliance with Alliant Techsystems, Inc. ("ATK"), a Fortune 500 defense contractor. In September 2010, RESET showcased the RIPR at ATK's booth at the Infantry War Fighting Conference at Fort Benning, Georgia. ATK's principal place of business is in Minneapolis, Minnesota, and it operates offices and manufacturing facilities throughout the country, including Arlington and Radford, Virginia. RESET maintains that none of its communications with ATK have taken place in Virginia or involved ATK's Virginia personnel. Puccini Decl., ECF No. 5 attach. 1.

Prototype alleges that RESET's RIPR "infringes many of the claims of the Hines Patent" and that "RESET's manufacture, use, offering for sale, and/or sale of its RIPR product is in violation of 35 U.S.C. § 271." Compl. ¶ 20–21, ECF No. 1. It further argues that this Court may exercise jurisdiction over RESET because RESET is marketing and offering to sell the RIPR to the U.S. military and, therefore, to residents of Virginia because the Pentagon is physically located in Virginia. In support of this argument, Prototype cites several press releases RESET issued that highlight its strategic relationships with Laser Devices, Lewis Machine and Tool,

and ATK and that also describe how RESET expects these relationships to help it reach military and commercial markets with the RIPR. Prototype specifically points to Puccini's statements that "we are eager to meet with NATO and the United States Army," and that "[t]he U.S. Army is eagerly scheduling meetings and briefings with RESET and the RIPR brand," (Pl.'s Opp'n Br. Ex. 1, ECF No. 12), as evidence of RESET's activities in Virginia.

Prototype also submitted exhibits purporting to show that RESET was selling the RIPR on Laser Device's website, which is accessible in Virginia, and through Laser Device's dealer network in Virginia. *Id.* Exs. 5–6, ECF No. 12. Prototype submitted another exhibit that appears to be an electronic order confirmation for one "Laser Devices RIPR Powered MIL–SPEC–1913 Rail" from *OpticsPlanet.com* § "OpticsPlanet" to be delivered to a PPI employee in Ashburn, Virginia. Notice of Filing Ex. 8, ECF No. 17. OpticsPlanet is one of Laser Device's retailers. At hearing, Prototype's counsel admitted its employee never received the product and that OpticsPlanet refunded the purchase price.

Mr. Puccini has maintained that no RIPR units are available for sale. He has stated that he was unaware that Laser Devices and OpticsPlanet had listed the RIPR for sale on their websites until Prototype filed its opposition brief and exhibits. Puccini Reply Decl. ¶ 6, ECF No. 14 attach. 1; Puccini Supp. Decl. Ex. B ¶ 5, ECF No. 18. Mr. Puccini further stated that the postings violate the agreement between RESET and Laser Devices, which requires the companies to provide each other with any RIPR-related marketing materials for review prior to use. ECF No. 14 attach. 1. Mr. Puccini apparently asked Laser Devices to correct its website and remove any indication that the

RIPR was available for sale. *Id.* He also requested that Laser Devices instruct OpticsPlanet to do the same. ECF No. 18 Ex. B ¶ 5. The evidence suggests that neither company is currently offering the RIPR for sale. ECF No. 15 ¶ 8, ECF No. 20 Ex. 1. Based on these facts, RESET challenges this Court's ability to exercise personal jurisdiction over it.

## II. *Jurisdictional Analysis*

### A. *Legal Standard*

■■■■■■■ Federal Circuit law governs whether a court has personal jurisdiction over the defendant in a patent infringement suit "because the jurisdictional issue is 'intimately involved with the substance of patent laws.' "[2] *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed.Cir.2009) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir.1995)); *Convergence Tech. (USA), LLC v. Microloops Corp.*, 711 F.Supp.2d 626, 633 (E.D.Va.2010). Ultimately, the plaintiff must prove that personal jurisdiction exists over the defendant by a preponderance of the evidence, *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed.Cir.2010); however, "in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed.Cir. 2003). In the context of a prima facie case, the Court must accept as true the uncontroverted allegations of the plaintiff and draw all reasonable factual inferences in the plaintiff's favor. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir.2008); *Autogenomics*, 566 F.3d at 1018. The plaintiff must nevertheless plead facts "sufficient in themselves to establish jurisdiction."

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F.Supp. 562, 564 (S.D.N.Y.1997).

■■■■ To establish personal jurisdiction over a non-resident defendant, a plaintiff must show that the state's long-arm statute authorizes jurisdiction over the defendant and that exercising jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed.Cir.2005); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed.Cir. 2005).

### B. *Virginia's Long–Arm Statute*

■■■■ The Supreme Court of Virginia has stated that "the purpose of our 'long arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia." *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800, 802 (1977). Because Virginia's Supreme Court has held that its long-arm statute is generally coextensive with the requirements of constitutional due process, courts often merge the statutory and constitutional jurisdictional inquiries. *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411 (Fed.Cir.2009) ("The Virginia long-arm statute has been interpreted by the Supreme Court of Virginia to generally authorize the exercise of jurisdiction to the full extent permitted by the U.S. Constitution.... [T]he statutory and constitutional inquiries coalesce into the question whether due process is satisfied by the court's exercise of personal jurisdiction over [the defendant]."). It is never-

---

**2.** Because the venue and discovery issues in this case do not involve substantive issues of patent law, Fourth Circuit precedent governs the Court's analysis of those issues. *See In re*

*Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir.2009); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1561 & n. 4 (Fed. Cir.1994).

theless possible for a defendant's contacts with Virginia to "to satisfy due process but not meet the specific grasp of the Virginia long-arm statute provision." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 6 (4th Cir. 2005); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 n. 23 (Fed.Cir.1994). But because this Court finds that exercising jurisdiction over RESET is inconsistent with due process, it is unnecessary to determine whether RESET's activities satisfy the narrower reach of Virginia's long-arm statute. *See Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F.Supp.2d 1130, 1138 (S.D.Fla. 2009).

### C. *Constitutional Due Process*

For a court to exercise personal jurisdiction over a non-resident defendant consistent with due process, the defendant must have minimum contacts with the forum state and the maintenance of suit in the forum must "not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Contacts that are merely random, fortuitous, attenuated or based on the unilateral activity of a third party do not satisfy the minimum contacts requirement. *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Rather, a defendant's contacts with the forum state must demonstrate that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), such that the defendant "should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559.

Two varieties of personal jurisdiction exist—general and specific. *Trintec*

*Indus.*, 395 F.3d at 1279. General jurisdiction requires the defendant to have continuous and systematic contacts with the forum state, whereas specific jurisdiction requires that a plaintiff's cause of action arise out of the purposeful activity that the defendant directed toward residents of the forum state. *Id.* Because Prototype does not argue that RESET's minimal sales in Virginia are sufficient to establish general jurisdiction over it, the Court need only determine whether specific jurisdiction exists.

The Federal Circuit has distilled the specific jurisdiction inquiry into a three-part test: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed.Cir.2001) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed.Cir.1995)). The first two elements relate to whether sufficient minimum contacts exist, whereas the third element relates to whether exercising jurisdiction comports with fair play and substantial justice. *Id.*

With respect to whether RESET has purposefully directed activities to residents of Virginia, Prototype all but concedes that RESET lacks direct contacts with the State. Pl.'s Opp'n Br. 8, ECF No. 12. Instead, Prototype invokes the "stream of commerce" theory and argues that RESET has indirect contacts with Virginia through its strategic alliances that establish distribution channels through which RESET allegedly markets and sells the RIPR in the state. The stream of commerce theory of personal jurisdiction applies generally to cases in which a manufacturer sells a product to a third-party intermediary, which then sells

the product to customers in the forum state. *See, e.g., J. McIntyre Mach., Ltd. v. Nicastro,* —— U.S. ——, 131 S.Ct. 2780, 2783, 180 L.Ed.2d 765 (2011); *Asahi Metal Indus. Co. v. Super. Ct. Cal.,* 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Beverly Hills Fan Co.,* 21 F.3d at 1567–68 (surveying intellectual property cases in which courts addressed the stream of commerce theory).[3]

 The lynchpin of the stream of commerce theory is a product for sale.

*See Tech. Patents, LLC v. Deutsche Telekom AG,* 573 F.Supp.2d 903, 915 (D.Md. 2008) ("[I]n order for the stream of commerce theory to apply, there must be an actual product placed into the stream of commerce."); *see also World–Wide Volkswagen Corp.,* 444 U.S. 286, 100 S.Ct. 559 (automobile); *Beverly Hills Fan Co.,* 21 F.3d 1558 (cooling fans); *Convergence Tech.,* 711 F.Supp.2d at 626 (vapor chambers). RESET is presently using its relationships with Laser Devices, Lewis Machine and Tool, and ATK to promote the

---

**3.** The Supreme Court first endorsed the stream of commerce theory in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. 559. Since *World–Wide Volkswagen,* the justices have divided over what facts are sufficient to demonstrate that a manufacturer has purposefully availed itself of the privileges and benefits of doing business in the forum state. In *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court examined whether a defendant who was aware that parts it manufactured and sold outside the U.S. might reach California had minimum contacts with the state sufficient to satisfy due process where the parts did in fact reach California. 480 U.S. 102, 105, 107 S.Ct. 1026. Although unanimous in its judgment, the justices were unable to reach a majority holding with respect to the minimum contacts analysis. Justice Brennan, joined by three other justices, argued that a manufacturer that placed a product into the stream of commerce knowing that it would benefit economically from sales of the product in the forum state established minimum contacts with the forum state. *Id.* at 117, 107 S.Ct. 1026 (Brennan, J., concurring). Justice O'Connor, joined by three justices, believed that a defendant must engage in additional conduct "indicat[ing] an intent or purpose to serve the market in the forum State" to establish minimum contacts in the forum state. *Id.* at 112, 107 S.Ct. 1026 (O'Connor, J., plurality opinion).

Last term, the Supreme Court revisited the stream of commerce theory in *J. McIntyre Machinery, Ltd. v. Nicastro,* —— U.S. ——, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011). Again, no opinion commanded a majority. The plurality held that "[t]he defendant's transmission of goods permits the exercise of jurisdic-

tion only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 2788 (Kennedy, J.). Consequently, the defendant, who intended to serve the entire U.S. market but whose only contact with New Jersey was the sale of one machine through an intermediary, did not "purposefully avail[ ] itself of the New Jersey market." *Id.* at 2790. In concurrence, Justices Breyer and Alito maintained that the plurality opinion swept too broadly and that the Court's precedent makes clear that the single sale of a product in the forum state is not sufficient to establish minimum contacts. *Id.* at 2792. The three dissenting justices argued that jurisdiction existed over the defendant because it marketed its product throughout the United States and deliberately arranged the distribution system through which the product traveled to New Jersey. *Id.* at 2797.

The Federal Circuit has not had an opportunity to interpret *J. McIntyre Machinery,* but it has applied the stream of commerce theory. Under Federal Circuit law, where a defendant manufacturer likely knows that a product will be sold in the forum state, purposefully ships the product through an established distribution channel that makes the product available for sale in the forum state, and the cause of action arises out of these activities, specific jurisdiction exists over the defendant. *See Nuance Comm., Inc. v. Abbyy Software House,* 626 F.3d 1222, 1234 (Fed.Cir.2010); *Beverly Hills Fan Co.,* 21 F.3d at 1565–66. This Court need not weigh in on the substance of this debate because there is no evidence that the RIPR ever entered the stream of commerce.

RIPR, but the record indicates that the RIPR exists in prototype form only. Although RESET has apparently exhibited the RIPR prototype at various venues to garner interest from potential customers, including the U.S. military,[4] the record reflects that RESET has never sold and is not currently selling the product.

Prototype has presented evidence that Laser Devices offered the RIPR for sale on its website and that Prototype's employee tried to place an order for the RIPR with OpticsPlanet. However, RESET has declared that it was unaware of these listings and took immediate action to have them removed.[5] The "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239–40; *see Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed.Cir.1998) (citing *Hanson* and explaining that "doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state]"). Thus, the Court cannot attribute OpticsPlanet's and Laser Devices' unauthorized sales activity to RESET. Prototype has not presented any other evidence of RIPR sales anywhere, much less in Virginia. Without evidence of RIPR sales, Prototype

cannot succeed in its stream of commerce argument.

The only remaining activities in which RESET has engaged that could arguably establish jurisdiction in Virginia are its marketing efforts. Prototype has identified three marketing activities that RESET directed at the U.S. military: (1) RESET's homepage on which it advertises the RIPR, (2) the RIPR website, and (3) press releases advertising the RIPR.[6] Ultimately, these materials also fail to demonstrate that RESET purposefully availed itself of the privilege of conducting activities in Virginia.

The fact that the U.S. Department of Defense is physically headquartered in this judicial district and that RESET has targeted marketing efforts toward the military does not, without more, establish that RESET has purposefully directed its activities toward residents of Virginia such that it could reasonably anticipate being haled into court here. *Cf. Trintec Indus.*, 395 F.3d at 1282 (finding that statement on defendant's website that it sold infringing product to the U.S. Postal Service did not establish that the sales were made in the District of Columbia merely because the Postal Service is headquartered there); *Brown v. Geha–Werke*, 69 F.Supp.2d 770, 777 (D.S.C.1999) (designing a product for the U.S. military is not the "functional

---

**4.** Prototyped has not presented evidence that RESET has exhibited the RIPR in Virginia.

**5.** At hearing, Prototype's counsel suggested that RESET had the listings removed to avoid jurisdiction in Virginia. The Court finds no support in the record for this allegation.

**6.** Marketing materials that advertise an infringing product may constitute an "offer to sell" and thereby violate federal patent law. 35 U.S.C. § 271(a). Based on general contracting principles RESET's promotional materials are likely too indefinite to constitute offers to sell. *See Rotec Indus., Inc. v. Mitsu-*

*bishi Corp.*, 215 F.3d 1246, 1254–55 (Fed.Cir. 2000) (adopting "the norms of traditional contractual analysis" to interpret "offer to sell" in 35 U.S.C. § 271(a)); *Xactware, Inc. v. Symbility Solution Inc.*, 402 F.Supp.2d 1359, 1368 (D.Utah 2005)(examining Federal Circuit precedent and holding that a website that featured the allegedly infringing product, including price information, did not constitute an offer to sell because the communication failed to create the power of acceptance in the visitor). Whether these materials actually constitute offers to sell is immaterial, because RESET did not purposefully direct its activities toward residents of Virginia.

704

equivalent of designing a product for the market in South Carolina simply because the military has situated a disproportionate number of military installations in ... the state"). Moreover, the mere ability of individuals at the Pentagon to access RESET's homepage, the RIPR website, and RESET's press releases on the Internet is insufficient to establish that RESET has targeted any conduct toward Virginia residents, particularly in the absence of evidence that a Virginia resident other than Prototype's employee actually used the interactive website features or purchased the RIPR.[7] *See Brown,* 69 F.Supp.2d at 778; *see also J. McIntyre Mach.,* 131 S.Ct. at 2790 (intent to serve the entire U.S. market insufficient to establish that the defendant had an intent to serve the New Jersey market in particular); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 401 (4th Cir.2003) (semi-interactive website did not establish personal jurisdiction in forum where there was no "manifest intent" on the part of the defendant to transact business in the forum in particular).

Although the Pentagon is physically located in Virginia, Prototype has failed to provide evidence that RESET directed its advertising efforts at military installations and personnel in Virginia any more than any other state or country in which the military operates. Moreover, the record indicates that RESET is not marketing the RIPR exclusively to the U.S. military; rather, it also targets NATO and commercial markets. Compl. Ex. E, ECF No. 1 attach. 5; Pl.'s Opp'n Br. Ex. 1; ECF No. 12 attach. 1. The evidence presented fails to demonstrate that RESET has specifically targeted Virginia residents with its mar-

keting materials. Consequently, this Court finds that RESET has not purposefully availed itself of the privilege of conducting activities in Virginia in a manner that would cause it to reasonably anticipate being haled into court here.

■ Where a defendant has not purposefully directed activities toward residents of the forum state, it "would 'offend traditional notions of fair play and substantial justice' " to require the defendant to litigate in that state. *Carefirst of Md.,* 334 F.3d 390 at 402 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Because RESET lacks sufficient minimum contacts with Virginia, exercising jurisdiction over RESET does not comport with constitutional due process.

### III. *Whether to Allow Jurisdictional Discovery*

Having determined that Prototype has failed to make a prima facie showing that RESET is subject to the personal jurisdiction in the Eastern District of Virginia, the Court must determine whether to grant Prototype's request for jurisdictional discovery or recommend dismissing or transferring the case as RESET requests.

■ Whether to grant Prototype's request for jurisdictional discovery is a procedural matter not unique to patent law. *See Beverly Hills Fan,* 21 F.3d at 1561 & n. 4. Consequently, the Fourth Circuit's precedents govern the question. *Id.* Generally, discovery under Rule 26 of the Federal Rules of Civil Procedure is freely permitted. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 64 (1993). However, "dis-

7. Many circuits have adopted the sliding scale approach to website interactivity propounded in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997), to determine whether operation of a website establishes sufficient minimum contacts in the fo-

rum state. The Federal Circuit has not yet adopted this approach, *Roblor Mktg. Grp.,* 645 F.Supp.2d at 1139 (S.D.Fla.2009); however, it has suggested that a website's level of interactivity plays a role in the analysis, *see Trintec Indus.,* 395 F.3d at 1281.

trict courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them].'" *Id.* (alteration in original) (quoting *In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C.Cir.1981)). "When a plaintiff offers only speculation or conclusory assertions about the contacts with the forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Md.*, 334 F.3d at 402; *see also Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory "*, 283 F.3d 208, 216 n. 3 (4th Cir.2002) (upholding decision to deny jurisdictional discovery where it appeared that "the plaintiff simply want[ed] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Sportrust Assocs. Int'l, Inc. v. Sports Corp.*, 304 F.Supp.2d 789, 794 (E.D.Va.2004) (denying discovery request where defendants' affidavits specifically denied jurisdictional contacts).

Prototype fails to make a concrete proffer in support of jurisdictional discovery. Prototype argues that discovery is warranted because "the fact that the U.S. military is headquartered and located in this district, [makes it] highly probable that RESET, either directly or indirectly, has placed its product through the stream of commerce into the district." Pl.'s Opp'n Br. 23, ECF No. 12. From this, it asks the Court to infer the existence of evidence sufficient to support jurisdiction. Howev-er, RESET has shown through the unrebutted declarations of Mr. Puccini that the RIPR is not for sale and that Laser Devices and OpticsPlanet acted unilaterally in listing the RIPR for sale on their websites. Mr. Puccini has further stated that RESET does not specifically target Virginia with its website and that its communications with ATK did not take place in Virginia or with Virginia personnel. Although the Court must draw reasonable inferences in Prototype's favor, *see Autogenomics*, 566 F.3d at 1018, it cannot reasonably infer that discovery will uncover evidence of RIPR sales in Virginia in light of Mr. Puccini's declarations and Prototype's failure to provide any evidence suggesting otherwise.[8] This Court therefore DENIES Prototype's request for jurisdictional discovery.

## IV. *Whether to Dismiss or Transfer*

Because this Court lacks jurisdiction over RESET, venue is improper. *See* 28 U.S.C. § 1400; *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n. 1 (Fed.Cir. 1999) (explaining that venue and personal jurisdiction are coextensive in suits for patent infringement). Where venue is improper, the Court may dismiss the case or "in the interest of justice, transfer such case to any district or division in which it could have been brought."[9] 28 U.S.C. § 1406(a); *see In re Carefirst of Md., Inc.*, 305 F.3d 253, 256 (4th Cir.2002) (explain-

---

8. Prototype asserts that it should have the opportunity to test Mr. Puccini's credibility by deposing him, but it has provided no evidence that casts doubt on the veracity of his declarations. *See McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir.1983) (upholding district court's denial of plaintiff's request to depose the defendants where plaintiffs offered nothing but bare allegations that jurisdiction existed); *Shamsuddin v. Vitamin Research Prods.*, 346 F.Supp.2d 804, 818 (D.Md.2004) (denying request for jurisdictional discovery where the plaintiffs had not suggested that the defendant misrepresented any facts).

9. As an alternative to dismissal or transfer for lack of jurisdiction, RESET seeks transfer in the interest of convenience under 28 U.S.C. § 1404(a). Section 1404 assumes that the action was brought in the correct forum. *See id.* ("[A] district court may transfer any civil action to any other district or division where it might have been brought.") Because this Court finds that it lacks personal jurisdiction over RESET, it cannot transfer for convenience under § 1404(a).

ing that transfer under § 1406(a) may be appropriate when a court lacks jurisdiction over the defendant). In an action for patent infringement, venue is proper where there is personal jurisdiction over the defendant. 28 U.S.C. § 1400; *Trintec Indus.*, 395 F.3d at 1280.

 Reset requests that this Court transfer the case to the Central District of California. Because RESET's principal place of business is in the Central District of California and that judicial district is the locus of most of the allegedly infringing activity, personal jurisdiction over RESET exists there and venue is proper. *See* 28 U.S.C. § 1400.

 Courts generally transfer rather than dismiss a case when transfer would facilitate judicial expediency and no evidence exists that the plaintiff acted vexatiously or in bad faith by filing in the wrong forum. *See Gov't of Egypt v. M/V Robert E. Lee*, 216 F.Supp.2d 468, 473 (D.Md.2002); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 594 (E.D.Va.1992). There is no evidence that Prototype willfully filed suit in the improper forum and transfer, rather than dismissal, will promote expedient resolution of this case on the merits. *See Verosol B.V.*, 806 F.Supp. at 594 (transferring a case to "avoid the costs and delay that would result from dismissal and refiling" in the proper forum). Consequently, the Court RECOMMENDS that this case be TRANSFERRED to the Central District of California.

## V. *RECOMMENDATION*

For the foregoing reasons, having found that this Court lacks personal jurisdiction over RESET, the Court RECOMMENDS that RESET's Motion, (ECF No. 6), be GRANTED IN PART, DENIED IN PART, and that the case be TRANSFERRED to the Central District of California.

## VI. *REVIEW PROCEDURE*

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure:

1. Any party may serve upon the other party and file with the Cleric specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy. Fed.R.Civ.P. 72(b)(2).

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir.1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Norfolk, Virginia.

October 14, 2011.